## UNITED STATES DISTRICT OF UTAH

| | |
|---|---|
| MATTHEW WALLACE, derivatively on behalf of CO-DIAGNOSTICS, INC., | Case No. 2:20-cv-00836-JNP |
| Plaintiff, | |
| *v.* | **MOTION FOR STAY OF ACTION** |
| DWIGHT H. EGAN, REED L. BENSON, BRENT SATTERFIELD, EUGENE DURENARD, EDWARD MURPHY, JAMES NELSON, and RICHARD S. SERBIN | Judge Jill N. Parrish |
| Defendants. | |
| And | |
| CO-DIAGNOSTICS, INC., | |
| Nominal Defendant | |
| JASON REAGAN, derivatively on behalf of CO-DIAGNOSTICS, INC., | |
| Plaintiff, | |
| *v.* | |
| DWIGHT H. EGAN, REED L. BENSON, BRENT SATTERFIELD, EUGENE DURENARD, EDWARD MURPHY, JAMES NELSON, and RICHARD S. SERBIN | |
| Defendants. | |
| And | |
| CO-DIAGNOSTICS, INC., | |
| Nominal Defendant | |

**TABLE OF CONTENTS**

**PAGES**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.    The Parties ................................................................................................ 2

    B.    Relevant Background ............................................................................... 3

        a.    The Securities Class Actions .................................................... 3

            1. The Gelt Action ................................................................... 3

            2. The Hernandez Action ......................................................... 6

        b.    Other Derivative Lawsuit ......................................................... 6

            1. Aguilera Tag-Along Derivative Lawsuit .............................. 6

            2. Klein Tag-Along Derivative Action ..................................... 7

            3. Plaintiff's Related Derivative Lawsuit .................................. 7

RELEVANT PROCEDURAL HISTORY .............................................................................. 9

ARGUMENT ....................................................................................................................... 9

    A.    Standards on A Motion To Stay ............................................................... 9

    B.    A Stay Would Simplify the Central Issues ............................................ 10

    C.    A Stay Would Promote Judicial Economy and Prevent Unnecessary Expense ... 11

    D.    Staying This Lawsuit Avoids Potential Harm to Co-Diagnostics ....................... 13

    E.    Staying This Lawsuit Will Not Prejudice Co-Diagnostics or Plaintiff ................ 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Pages**

*ACII Corp. v. STD Entertainment USA, Inc.*
844 F. Supp. 1378 (N. D. Cal. 1994) ........................................................... 9

*Am. Life Ins. Co. v. Stewart*
300 U.S. 203 (1937) ..................................................................................... 8

*Breault v. Folino*
No. SACV010826 GTLANX, 2002 WL 31974381 (C.D. Cal. Mar. 15, 2002) ...................... 5, 10

*Brudno v. Wise*
*No. Civ. A. 19953,* 2003 WL 1874750 (Del.Ch. Apr. 1, 2003) ................................ 6, 10

*Cucci v. Edwards*
No. SACV 07–532 PSG (MLGx), 2007 WL 3396234 (C.D.Cal. Oct. 31, 2007) ........................ 6

*In re American Apparel, Inc. Sec. Litig.*
2012 WL 9506072 (C.D. Cal., Jul. 31, 2012) .................................................... 5

*In re STEC, Inc. Derv. Litig.*
2012 WL 8978155 (C.D. Cal., Jan. 11, 2012) .................................................... 7

*Kittel v. First Union Mortg. Corp.*
303 F.3d 1193 (10th Cir. 2002) .................................................................. 5

*Landis v. v. North American Co.*
299 U.S.248 (1936) ............................................................................ 5, 8

*Massey v. Merrill Lynch & Co.*
 464 F.3d 642 (7th Cir. 2006) ................................................................... 8

*Rosenblum*
2008 U.S. Dist. LEXIS 65353, at *24 ............................................................ 8

*Wells v. Smith*
*2014 WL 688719,* at *2-4 (D. Colo., Dec. 8, 2014) ............................................. 5

ii

**Statutes**

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 6

Defendants Dwight Egan ("Egan"), James Nelson ("Nelson"), Eugene Durenard ("Durenard"), Edward Murphy ("Murphy"), Richard Serbin ("Serbin"), Reed Benson ("Benson"), and Brent Satterfield ("Satterfield") (collectively, the "Individual Defendants") and Nominal Defendant Co-Diagnostics, Inc. request that this action be stayed pending the resolution of other securities fraud class actions pending in the United States District Court, District of Utah, namely *Gelt Trading, LTD v. Co-Diagnostics, Inc., et al.,* Case No. 2:20-cv-00368-CMR, (the "Gelt Action") and *Fernando Hernandez v. Co-Diagnostics, Inc., et al.,* Case No. 2:20-cv-00481-DAO (the "Hernandez Action") (collectively, the "Securities Class Actions").

## INTRODUCTION

This is a shareholder derivative action commenced by Plaintiffs Matthew Wallace ("Wallace") and Jason Reagan ("Reagan") (collectively referred to herein as the "Plaintiffs") derivatively on behalf of Co-Diagnostics, Inc ("Co-Diagnostics"), alleging that the Individual Defendants breached their fiduciary duties as directors and/or officers of Co-Diagnostics and violated Sections 10(b) and 21D of the Exchange Act.  Plaintiff asserts these alleged false and misleading statements resulted in the Securities Class Actions, causing Co-Diagnostics damage, mainly in the form of legal fees to defend the Securities Class Actions. As set forth in more detail below, this derivative action should be stayed pending resolution of the Securities Class Actions.

Plaintiff's claims here are expressly grounded on the same allegations forming the basis for the Securities Class Actions, and the "damages" Plaintiff seeks to recover on behalf of Co-Diagnostics will arise only if, and to the extent that, Co-Diagnostics and its management are found liable in the Securities Class Actions.  Therefore, a stay of this derivative action will simplify the central issue, promote judicial economy, and prevent unnecessary expense and efforts by the parties.  Notably, a resolution of the Securities Class Actions could make this action moot, or, at the very least, would significantly simplify

the central issue and the scope of the Individual Defendants' liability, as the claims here are nearly entirely predicated on the outcome of the Securities Class Actions.

Plaintiffs have been well aware of the filings in the Securities Class Actions and several other derivative actions identical to this, which filings include Defendants' motions to dismiss the Securities Class Actions, setting forth Defendants' defense and motions to stay derivative actions, setting forth a basis to stay the actions. Plaintiffs have attempted to avoid the fact that the defenses presented in the Securities Class Actions and the basis for staying the other derivative action require that this action be stayed by attempting to plead a claim for insider trading. However, like their claim for breach of fiduciary duties, the viability of the insider trading claim will rest on the findings of fact and law to be extensively litigated in the Securities Class Actions. Notably, the purported insider trading claim lacks any new allegations or allegations which will not be resolved in the Securities Class Actions. Further, Plaintiffs claims for relief in their newest complaint are identical to those previously requested in their complaint which did not include this claim.

Accordingly, if the instant derivative action is permitted to proceed, Co-Diagnostics will be prejudiced in a number of ways. For example, Co-Diagnostics will be forced to divert resources from its business and from defending the Securities Class Actions to defend this action. Also, in order to prevail here Plaintiff must necessarily prove allegations and/or maintain positions that would undermine Co-Diagnostics' defense in the Securities Class Actions.

Lastly, while proceeding with this case will prejudice Co-Diagnostics as detailed above, a stay will not unduly prejudice Plaintiff, regardless of the outcome of the Securities Class Actions. Indeed, even if Co-Diagnostics is unsuccessful in its defense of the Securities Class Actions, Plaintiff will benefit from the narrowing of the issues in this action, and the parties and the Court will be spared the time and expense incurred in litigating claims that may be amended or dismissed in the Securities Class Actions.

Accordingly, the Individual Defendants respectfully request this Court exercise its discretion to stay this derivative action until liability is adjudicated in the Securities Class Actions.

## STATEMENT OF FACTS

### A.  The Parties

Plaintiff alleges that he is a shareholder of Co-Diagnostics. (Compl. ¶ 13).  Plaintiff purports to bring this action derivatively on behalf of Co-Diagnostics seeking to remedy alleged wrongdoings committed by Co-Diagnostics' directors and officers from February 25, 2020 through the present.  (*Id.* ¶ 10).  Co-Diagnostics is a publicly-traded company that develops and sells molecular tools.  (*Id.* ¶¶1, 14). The Individual Defendants are senior officers and/or directors of Co-Diagnostics.  (*Id.* ¶¶ 15-22).

### B.  Relevant Background

#### a.  The Securities Class Actions

##### 1. The Gelt Action

On June 15, 2020, the Gelt Action was commenced, in which it was alleged that Co-Diagnostics and the Individual Defendants (collectively, the "Gelt Action Defendants") violated Section 10(b) and Section 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by making false and/or misleading statements to the public that the Co-Diagnostics Covid-19 testing kits were 100% accurate in certain press releases and public statements.  *See Gelt Trading, LTD v. Co-Diagnostics, Inc., et al.,* Case No. 2:20-cv-00368-CMR (D. Utah) (Gelt Action Am Compl. ¶¶ 96, 101).

On September 14, 2020, the Gelt Action Defendants filed a motion to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6), Rule 9(b) and under the Private Securities Litigation Reform Act ("PSLRA").  In that motion, the Gelt Action Defendants made three arguments for dismissal.  First, they alleged Gelt failed to allege any precise purportedly false statement sued upon, in contradiction of the

federal pleading standards – it is unclear exactly which statements actually made by any Gelt Action Defendant are alleged to be false and actionable. Second, they argued that as best as can be gleaned from the Complaint as pled, the purportedly false statements are in fact true and, therefore, Gelt has failed to plead a misrepresentation of material fact. Finally, the Gelt Action Defendants argued that, with the exception of defendant Satterfield, Gelt has failed to ascribe any of the alleged misstatements to the Gelt Action Defendants with any particularity. On September 16, 2020, the court stayed the Gelt Action pending the resolution of outstanding motions to consolidate. (Gelt Action Dkt. #73).

After the motions to consolidate were resolved, the Gelt Plaintiffs filed a Second Amended Complaint (the "Gelt SAC".) (Gelt Action Dkt. # 86). For the Gelt Action, the Gelt SAC relies upon allegations largely identical to those alleged and sought to be proven in the instant action. In pertinent part, the Gelt SAC alleges that Co-Diagnostics issued a press release which reported the results of an independent laboratory evaluation found its COVID-19 tests to demonstrate 100% sensitivity and 100% specificity. (Gelt SAC ¶62). The Gelt SAC further alleges that the Individual Defendants knew that the tests were less than 100% accurate and that the press release materially misstated the accuracy of Co-Diagnostics' COVID-19 test. (Gelt SAC ¶¶13, 63, 64, 89) It was also alleged that Co-Diagnostics knew that the statements contained in a press release (which simply reported the findings of independent laboratory tests) were false and did not release any clarifying statements regarding the accuracy of its test. (Gelt SAC ¶¶61, 70, 80, 88)

The Gelt Plaintiffs allege that the action is one to hold Co-Diagnostics and the Individuals responsible for the alleged misrepresentations. (Gelt SAC ¶17) In that specific regard, it was alleged that the Defendants knew that the documents released and statements made were materially false and misleading, that they knew of the same, and had confidential proprietary information concerning the same. (Gelt SAC ¶89)

4

The Gelt Plaintiffs allege that the Defendants knew that the statements issued were materially false and misleading, that they knowingly participated or acquiesced in the dissemination of such statements, and by way of their associations with Co-Diagnostics, were privy to certain confidential information. (Gelt SAC 89).  They allege that "the Individual Defendants directly benefited from the fraudulent overstatement of the Company's technological capabilities in the form of at least the false inflation of their own stock and stock options, which Co-Diagnostics insiders have been cashing in on since the onset of the pandemic. (Gelt SAC ¶¶ 16, 90)  Specifically, it is alleged that Servin sold nearly $1 million worth of Co-Diagnostics stock with the knowledge that the COVID-19 tests were not 100% accurate with the further knowledge that the stock was artificially high. (Gelt SAC ¶¶91, 92)  Likewise, it is alleged that Durenard sold nearly $1 million of Co-Diagnostics stock knowing that the company's COVID-19 tests were not 100% accurate and that the stock was artificially high. (Gelt SAC ¶95).

On May 5, 2021, Defendants moved to dismiss the Gelt Action. (Gelt Action Dkt. # 91).  The basis for the motion, in sum and substance, is that the Gelt SAC failed to allege any false statement, misrepresentation of material fact, and that there was no duty to issue a corrective statement.  Defendants argue that the statements in the press release and other alleged statements, which simply reported on the findings of independent laboratory analyses, were true when made.  Instead, the Gelt Plaintiffs never actually alleged what was false or misleading about the press release which reported on the findings of the lab studies.  While the Gelt SAC quotes several news articles that question the accuracy of Co-Diagnostics' COVID-19 tests, it does not attempt to match the alleged misstatements of Defendants (as opposed to the Gelt Plaintiffs' own mischaracterizations of Defendants' statements) to the purported evidence that would show such actual statements were false.  Ultimately, Defendants merely reported laboratory findings and the Gelt SAC fails to allege that they did so falsely.

With respect to the portion of the motion disposing of the Gelt Plaintiffs' theory based on a duty

to correct, Defendants argued, *inter alia*, that the Gelt SAC did not allege that the Defendants knew that the test results they reported were inaccurate or that such hypothetical knowledge was gained during the class period.

Finally, Defendants further argued that the allegations that Defendants ostensibly knew that the alleged statement of 100% accuracy was false. In the event that the Gelt Plaintiffs are permitted to proceed on this theory, Defendants intend to vigorously defend against such allegations. Notably, the Gelt Plaintiffs' attempted to allege scienter based on the alleged stock sales which form the basis of the instant Plaintiffs' insider trading claim.

### 2. The Hernandez Action

Subsequently, on July 2, 2020, Fernando Hernandez ("Hernandez") brought a second securities-class action lawsuit. In it, Hernandez alleged the same causes of action identified in the Gelt Action complaint against the same individual defendants, who are also the Individual Defendants in the instant case. The claims in the Hernandez Action arise from the same purported misrepresentations alleged in the Gelt Action. The Hernandez Action has been consolidated with the Gelt Action.

### b. Other Derivative Actions

### 1. Aguilera Tag-Along Derivative Lawsuit

On or about September 17, 2020, Luis Aguilera ("Aguilera") commenced a shareholder derivative action, captioned *Luis Aguilera v. Egan et al.*, bearing case number 2:20-cv-654 (the "Aguilera Action"), in which Aguilera alleged breach of fiduciary duties and unjust enrichment against the same individual defendants in this action. The claims in the Aguilera action are premised on the same purported misrepresentations alleged in the instant case and the Securities Class Actions. Accordingly, the Individual Defendants moved for a stay of the Aguilera case. The Aguilera Action was subsequently stayed by Order dated December 11, 2020. (Aguilera Action Dkt. # 31).

### 2. **Klein Tag-Along Derivative Lawsuit**

On or about December 3, 2020, Melvyn Klein ("Klein") brought a shareholder derivative lawsuit captioned *Melvyn Klein v. Egan et al.*, bearing case number 2:20-cv-850 (the "Klein Action"), in which she claims for breach of fiduciary duties, violation of Sections 10(b) and 21D of the Exchange Act as well as waste of corporate assets against the same individual defendants in this action. Similarly situated as in Aguilera Action, Klein's claims are premised on the same purported misrepresentations alleged with the Securities Class Actions. Therefore, Defendants moved for a stay, which is currently pending before this court.  This action was also stayed by Court Order dated February 23, 2021. (Klein Action Dkt. # 27).

The Aguilera Action and Klein Action were consolidated by Order dated April 29, 2021. (Aguilera Action Dkt. # 34).  The stay of each action was upheld as to the consolidated action. (Klein Action Dkt. # 34).

### 3. **Plaintiff's Related Derivative Lawsuit**

Plaintiffs purport to bring this tag-along lawsuit derivatively on behalf of Co-Diagnostics, seeking damages arising from the Individual Defendants' alleged misstatements that form the basis for the Securities Class Actions.

Like the Securities Class Actions, the instant Plaintiffs alleged that the Individual Defendants touted Co-Diagnostics' COVID-19 tests as being 100% accurate. (Am. Compl. ¶36)  While the Plaintiffs did not immediately set forth the specifics of this claim, they later quoted articles in which Satterfield reported the results of the aforementioned independent laboratory experiments and a press release reporting the same, mirroring the allegations of the Securities Class Actions. (Am. Comp. ¶¶41, 42)  Plaintiffs allege that these statements were misleading, again mirroring the allegations of the Securities Class Actions. (Am. Compl. ¶43).  Again, just like in the Securities Class Actions, the instant Plaintiffs make several allegations questioning the accuracy of Co-Diagnostics' COVID-19 tests, which do not

actually question the accuracy of the alleged misstatements (which simply reported laboratory results). (Am. Compl. ¶¶44-50).

Finally, the Plaintiffs allege that Durenard and Serbin each sold Co-Diagnostics shares. (Am. Compl. ¶¶51-53).  They allege that these sales were made while Durenard and Serbin allegedly knew that the aforementioned statements were false. (Am. Compl. ¶54). With regard to the foregoing, Plaintiff alleges that the officers and directors of Co-Diagnostics had knowledge of material non-public information regarding the company. (Am. Compl. ¶28).

Plaintiff alleges that as a result, the Individual Defendants breached their fiduciary duties to Co-Diagnostics and are personally liable for any damages that Co-Diagnostics suffers as a result of the Securities Class Actions, including legal fees incurred in connection with the Securities Class Actions, funds paid to settle the Securities Class Actions, costs incurred from compensation and benefits paid to Defendants, and purported governance deficiencies. (Am. Compl. ¶¶ 55, 74, 75, 76).  Notably, no other particularized damages resulting from the alleged "insider trading" were alleged. (Am. Comp., *generally*).

The instant derivative lawsuit, therefore, is expressly predicated on, and dependent upon, the outcome of the Securities Class Actions.

Plaintiff also asserts claims for contribution under Sections 10(b) and 21D of the Exchange Act, both of which are predicated upon the outcome of the Securities Class Action. (Compl. ¶¶ 60-72).

## **RELEVANT PROCEDURAL HISTORY**

Plaintiff Matthew Wallace initiated this action by through the filing of a complaint in an action captioned *Matthew Wallace v. Egan et al.* bearing the instant case number. (Dkt. # 2)  Thereafter, Plaintiff Jason Reagan initiated a separate action captioned *Jason Reagan v. Egan et al.* bearing caption number 2:21-cv-54.  These actions were consolidated on March 18, 2021. (Dkt. # 18)

Wallace's initial complaint alleged the following damages to the company: a) legal fees incurred

in connection with the Securities Class Action; b) funds paid to settle the Securities Class Action; and c) costs incurred crom compensation and benefits paid to the defendants who breached their duties to Co-Diagnostics. (Compl. ¶46)  The Amended Complaint alleges identical damages and includes damages regarding governing deficiencies concerning the allegedly misleading statements. (Am. Comp. ¶55) Notably the Amended Complaint does not allege any damages to the company as a result of the ostensible insider trading. (Am. Compl., *generally*).

## ARGUMENT

### A.  Standards on A Motion to Stay

A court has broad authority to stay one action in favor of another when doing so will promote judicial economy and may avoid unnecessary litigation and effort by the parties. *Landis v. North American Co.,* 299 U.S. 248, 255 (1936); *Kittel v. First Union Mortg. Corp.,* 303 F.3d 1193, 1194-95 (10th Cir. 2002) (exercising its discretion under *Landis* to stay an appeal pending the outcome of related state court proceeding). Where, as here, a stay will avoid piecemeal litigation of claims that might prove unnecessary, avoid potential inconsistent results, and/or serve the ends of judicial efficiency, courts have not hesitated to stay an action. *Breault v. Folino,* No. SACV010826 GTLANX, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (unpublished) (staying derivative action in favor of securities lawsuit on basis that it was in company's best interest to avoid having its officers and directors defend two actions simultaneously).

In determining a motion for a stay of an action, courts generally consider the following three factors: (1) whether the stay will simplify the issues in question and streamline the trial and reduce the burden of litigation on the parties and the court; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; and (3) the potential prejudice to the moving party if the stay is not granted. *See In re American Apparel, Inc. Sec. Litig.,* 2012 WL 9506072, at * 43-47 (C.D. Cal., Jul. 31, 2012) (unpublished). *See also Wells v. Smith*, 2014 WL 688719, at *2-4 (D. Colo., Dec. 8, 2014)

(unpublished).

Here, the very same alleged misstatements are at the heart of both the Securities Class Actions and this derivative action: the April 30, 2020 Salt Lake Tribune article entitled "*This is a potential public health disaster: COVID-19 results from TestUtah.com are raising questions*" (Milazzo Decl. Exh. A.), and the May 1, 2020 press release of Co-Diagnostics, Inc. entitled "*Co-Diagnostics, Inc. Releases COVID-19 Test Performance Data: Consistently Demonstrates 100% Sensitivity and 100% Specificity Across Independent Evaluations*" (*Id.,* Exh. B.). Likewise, the sales of stock by certain of the Individual Defendants are to be litigated in the Securities Class Actions. Given that this derivative action is entirely dependent upon a finding of liability in the Securities Class Actions, and the significant prejudice Co-Diagnostics would suffer if this derivative action is permitted to proceed, the Court should exercise its discretion and stay this case pending resolution of the Securities Class Actions.

### B.   A Stay Would Simplify the Central Issues

Courts considering the interplay between derivative and securities actions often find derivative claims "cannot be adjudicated in full (or even in large measure) until the [securities class] [a]ction is tried." *Brudno v. Wise, No. Civ. A. 19953,* 2003 WL 1874750, at *4 (Del.Ch. Apr. 1, 2003) (unpublished); *see also Cucci v. Edwards,* No. SACV 07–532 PSG (MLGx), 2007 WL 3396234, at *2 (C.D.Cal. Oct. 31, 2007) (unpublished) (recognizing "[i]f Defendants are successful on the motion to dismiss the Securities Class Action complaint, Plaintiffs may have little basis for pursuing this Shareholder Derivative Action"). Thus, "the sensible ordering of events is for the ... [securities class] [a]ction to proceed first." *Brudno,* 2003 WL 1874750, at *5.  A resolution of class claims "would significantly simplify the central issue in the derivative case, i.e., the scope of the individual defendants' liability." *In re Groupon Derivative Litig.,* 882 F. Supp. 2d 1043, 1049 (N.D. Ill. 2012).  Indeed, "[i]f the class claims are disposed of on a motion to dismiss, then the scope of the derivative action will be significantly limited." *Id*., at 1049.

10

Here, staying this derivative action until the Securities Class Actions are resolved will greatly simplify the issues here because if the latter claims are dismissed[1], then the question of whether the Individual Defendants are liable for Co-Diagnostics' alleged securities violations will be moot.  Indeed, central to Plaintiff's derivative claims is the allegation that Co-Diagnostics has been seriously harmed by "potential liability due to currently filed securities class actions," and if the Securities Class Actions are dismissed, then a significant portion of the derivative action falls away.  Similarly, if the plaintiffs in the Securities Class Actions prevail, the central issue in this derivative action will have been resolved, thereby simplifying the instant litigation.  Likewise, the facts and circumstances surrounding the knowledge of the Individual Defendants concerning the truth of the alleged statements will be extensively litigated.  As such, their alleged actions, and therefore potential derivative liability, in making any statements, allowing statements to be made, not issuing corrective statements, and trading their shares of Co-Diagnostics stock will have been litigated and will be ripened for a determination on the merits, which will also take place in the Securities Class Actions.

As such, the instant derivative action should stay pending the adjudication of the Securities Class Actions.

### C.  A Stay Would Promote Judicial Economy and Prevent Unnecessary Expense

Next, a stay of this derivative action would promote efficiency and judicial economy.  Where, as here, a derivative action arises from, and is dependent upon, a finding of liability in a securities fraud action, courts have consistently stayed the derivative claim pending the resolution of the securities fraud claim.  *See In re STEC, Inc. Derv. Litig.,* 2012 WL 8978155, at *6-7 (C.D. Cal., Jan. 11, 2012) (unpublished) (court found a stay was more efficient that allowing derivative action to proceed with

---

[1] The motion to dismiss filed by Co-Diagnostics and the Individual Defendants in the *Gelt* case is currently pending and, if granted, carries the potential to moot Plaintiff's major claims in the instant case.

securities fraud claim because the outcome of the securities fraud action would bear, at least, on the prudence of proceeding with the derivative action).

Here, a stay furthers the efficiency and judicial economy because it is premature to litigate Plaintiff's claims, which amount to claims for indemnification for, and damages caused from, the Securities Class Actions, the merits of which have not yet been adjudicated. This lawsuit is expressly based on the same allegations as the Securities Class Actions, and liability here is contingent upon Co-Diagnostics' purported liability in the Securities Class Actions. *See* Am. Compl. ¶¶ 55, 76 ("As a direct and proximate result of the breaches of their fiduciary obligations by defendants Egan, Benson, Satterfield, Durenard, Murphy, Nelson, and Serbin, Co-Diagnostics has sustained and continues to sustain significant damages. including direct monetary damages, exposure to liability from securities litigation…").  The relief Plaintiff seeks in this lawsuit includes the expenses associated with the Securities Class Actions. (Compl., ¶ 55)[2]  Thus if Co-Diagnostics is not found to be liable for the claims asserted in the Securities Class Actions, the claims in this action will no longer have merit and will be disposed of; the Individual Defendants will not face any derivative liability.

Without a stay, the Court and the parties will be forced to litigate the issues resulting from same alleged misconduct in two separate actions.  This would result in the duplication of discovery and other resources in defending these actions.  This is not an efficient use of resources.  And in that specific regard, insofar as this action is brought derivatively on behalf of Co-Diagnostics, Plaintiffs cannot argue that it is in Co-Diagnostics' interest to litigate the cases simultaneously, expending unnecessary resources, and potentially prejudicing one or both of the lawsuits.

---

[2] For instance, Plaintiff alleges that "as a direct and proximate result of Defendants' conduct, Co-Diagnostics has been seriously harmed and will continue to be. Such harm includes, but is not limited to: a) Legal fees incurred in connection with the Securities Class Action: b) Any funds paid to settle the Securities Class Action..."

Further, the motion to dismiss filed by Co-Diagnostics and the Individual Defendants in the Gelt Action has the potential to moot Plaintiff's major claims in this case. Indeed, if it is determined that the Individual Defendants are not liable in the Securities Class Actions, the basis for this derivative action would fall.

Thus, a stay of this action will help promote judicial economy and this motion should be granted.

### D.  Staying This Lawsuit Avoids Potential Harm to Co-Diagnostics

In prosecuting derivative litigation, the best interests of Co-Diagnostics are paramount and a stay of this action promotes that interest. This is because "[t]he derivative plaintiff, as a fiduciary to the company, owes a duty of loyalty to the company to act in its best interest." *Breault,* 2002 WL 31974381, at *1. Premature prosecution of this lawsuit could prejudice Co-Diagnostics, in whose name Plaintiff purports to act, rendering a stay appropriate. *See, e.g., Landis,* 299 U.S. at 255 (stay granted if clear case of hardship to moving party).

Numerous courts have long recognized this potential harm to the company and have stayed tag-along derivative suits on this basis. For example, in *Massey v. Merrill Lynch & Co.,* 464 F.3d 642, 647 (7th Cir. 2006), the Court noted the derivative plaintiff and the corporation "may have different interests and goals in litigation, and the shareholder could act in ways that harm the corporation, even if unintentionally. The Court also noted that "denying a stay will potentially cause substantial harm to [defendant company]" given that it was "likely that the officers and director Defendants in the derivative action would be important witnesses" and any liability of the officers in the derivative suit could be "imputed to the corporation" in the class-action suit. *Rosenblum,* 2008 U.S. Dist. LEXIS 65353, at *24.

At bar, forcing this action would cause harm to Co-Diagnostics, whose interests the Plaintiff purportedly represents. It is in Co-Diagnostics' best interests to have Co-Diagnostics and its officers and directors single-mindedly focus upon the defense of the Securities Class Actions, thereby potentially avoiding or limiting the very liabilities for which Plaintiff seeks indemnification and damages. That corporate interest would be compromised if Co-Diagnostics and the Individual Defendants were forced to

13

engage in this collateral litigation over whether and which of the Individual Defendants might be required to provide reimbursement for yet-to-be adjudicated liabilities.  *See Breault,* 2002 WL 31974381 at *2 (staying derivative action in favor of securities lawsuit because it was in the company's best interest to avoid having its officers and directors defend two actions simultaneously).

Furthermore, putting Co-Diagnostics in the position of litigating against the very people who may serve as important company witnesses in the defense of the Securities Class Actions would threaten to prejudice Co-Diagnostics' ability to mount a vigorous defense.  *See id.*  Specifically, the Individual Defendants' litigation plan, as it pertains to all of the actions globally, must be to present the best defense possible to the Securities Class Actions.  After all, the goal of this lawsuit is to minimize damage to the company from the Securities Class Actions.  However, requiring the Individual Defendants to defend themselves in their individual capacities in this lawsuit may pit their interests against those of the company and alter their overall litigation strategy in a manner which is prejudicial to the defense of the Securities Class Actions.  In that regard, the best interest of the company is to allow the interests of the Individual Defendants and Co-Diagnostics to align to the greatest degree possible, which requires a stay of this action.

Even more, in the event this lawsuit advances more quickly than the Securities Class Actions and somehow the Individual Defendants are found liable for failing to correct misleading statements, such a finding could be viewed as establishing that the statements alleged were actually misleading, thus potentially establishing Co-Diagnostics' liability in the Securities Class Actions.

As such, to avoid the potential harm to Co-Diagnostics in this case, this derivative action should be stayed pending the resolution of the Securities Class Actions and this motion should be granted.

**E.  Staying This Lawsuit Will Not Prejudice Co-Diagnostics or Plaintiff**

In determining whether to grant a stay, courts generally consider whether doing so would

14

cause undue prejudice or present a clear tactical disadvantage to the non-moving party. *ACII Corp. v. STD Entertainment USA, Inc.,* 844 F. Supp. 1378, 1380 (N. D. Cal. 1994). A stay of this lawsuit will not prejudice Co-Diagnostics or Plaintiff, who purports to act on behalf of Co-Diagnostics. Co-Diagnostics will not even incur the vast majority of the purported damages Plaintiff seeks to recover until and if liability is found in the Securities Class Actions. If Co-Diagnostics prevails in the Securities Class Actions such that there is no finding of wrongdoing, then Co-Diagnostics can consider that information in deciding whether to pursue claims against others. If, on the other hand, there is an adverse judgment against Co-Diagnostics in the Securities Class Actions, Co-Diagnostics will be in a better position to evaluate whether, how, and against whom, to proceed. *See Brudno,* 2003 WL 1874750, at \*4.

Indeed, staying this lawsuit will benefit both Co-Diagnostics and its shareholders—including Plaintiff—by enabling Co-Diagnostics to conserve its resources and focus on the defense of the underlying Securities Class Actions. Because a stay will benefit Co-Diagnostics and Plaintiff, it will necessarily not prejudice them. Accordingly, a stay is proper.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant the Individual Defendants' motion to stay this derivative action pending resolution of the Securities Class Actions.

Dated: Salt Lake City, Utah
      May 27, 2021

Carmel, Milazzo & Feil, LLP

  /s/ Christopher P. Milazzo        
Christopher P. Milazzo, Pro Hac Vice
Ryan B. Hancey, Esq., Utah State Bar Number 9101
*Attorney for Defendants*
68 South Main Street, Suite 200
Salt Lake City, Utah 84101
