**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**


IN RE CO-DIAGNOSTICS, INC.          :   Case No. 2:20-cv-00836-JNP
DERIVATIVE LITIGATION               :


**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

I.   INTRODUCTION .................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................3

     A.   Alleged Wrongdoing...................................................................................3

     B.   Plaintiffs' Litigation Demands...................................................................5

     C.   The Board's Response ...............................................................................5

     D.   This Action.................................................................................................6

     E.   The Securities Class Action ......................................................................6

     F.   The "Demand Futility Actions" .................................................................7

III. ARGUMENT .........................................................................................................7

     A.   This Action Should Not Be Stayed Pending the Securities Class Action................7

          1.   A Stay Would Prejudice Plaintiffs, Co-Diagnostics, and the
               Public .............................................................................................10

          2.   A Stay Would be Contrary to Judicial Economy......................................13

          3.   Defendants Identify No Cognizable Hardship in Being Required
               to Go Forward ................................................................................16

IV.  CONCLUSION....................................................................................................19

## TABLE OF AUTHORITIES

Cases                                                                    Page

*Bakken Res. Inc. v. Edington*,
    2018 WL 1353271 (S.D.N.Y. Mar. 15, 2018)........................................................8, 9, 10

*Breault v.  Folino*,
    2002 WL 31974381 (C.D. Cal. Mar. 15, 2002)..................................................11

*Brenner v. Albrecht*,
    2012 WL 252286 (Del. Ch. Jan. 27, 2012)........................................................11

*Brudno v. Wise*,
    2003 WL 1874750 (Del. Ch. Apr. 1, 2003)........................................................11

*Carpenters Pension Fund of Ill. v. Neidorff*,
    2019 WL 3037194 (E.D. Mo. July 11, 2019)...........................................9, 12, 15

*Citibank, N.A. v. Hakim*,
    1993 WL 481335 (S.D.N.Y. Nov. 18, 1993)........................................................10

*Clinton v. Jones*,
    520 U.S. 681 (1997).........................................................................................9

*Deluca v. GPB Auto. Portfolio, LP*,
    2020 WL 7343788 (S.D.N.Y. Dec. 14, 2020) .............................................9, 16

*D'Omilia Plastic Surgery, PC v. Sweeton*,
    2013 WL 6070037 (D.N.J. Nov. 18, 2013) ........................................................10

*Emps. Ret. Sys. of the City of St. Louis v. Jones, et al.*,
    No. 20- cv-04813 (S.D. Ohio).............................................................................18

*Hefler v. Wells Fargo & Co.*,
    No. 3:16-cv-05541 (N.D. Cal.)............................................................................18

*In re American Apparel, Inc. S'holder Deriv. Litig.*,
    2012 WL 9506072 (C.D. Cal. July 31, 2012)......................................................15

*In re Apple Inc., Deriv. Litig.*,
    No. 5:06-cv-04128 (N.D. Cal.) ...........................................................................18

*In re Apple Inc. Sec. Litig.*,
    No. 5:06-cv-05208 (N.D. Cal.) ...........................................................................18

*In re Bank of Am. Corp. Sec., Deriv., & Employee Ret. Income Sec. Act (ERISA) Litig.*,
No. 1:09-md-02058-PKC (S.D.N.Y.) ...................................................................18

*In re BofI Holdings, Inc. S'holder Litig.*,
2018 WL 3993358 (S.D. Cal. Aug. 21, 2018) ......................................................12

*In re China Agritech, Inc. S'holder Deriv. Litig.*,
2013 WL 2181514 (Del. Ch. May 21, 2013)........................................................14

*In re Cmty. Health Sys., Inc. S'holder Deriv. Litig.*,
No. 3:11-cv-00489 (M.D. Tenn.)...........................................................................18

*In re CytRx Corp. S'holder Deriv. Litig.*,
2015 WL 12745085 (C.D. Cal. June 24, 2015)........................................8, 12, 14

*In re Galena Biopharma, Inc. Deriv. Litig.*,
83 F. Supp. 3d 1033 (D. Or. 2015) ............................................................. passim

*In re Juniper Deriv. Actions*,
No. 5:06-cv-03396 (N.D. Cal.) ..............................................................................18

*In re Juniper Sec. Litig.*,
No. 5:06-cv-04327 (N.D. Cal. ) .............................................................................18

*In re Molycorp, Inc. S'holder Deriv. Litig.*,
2014 WL 1891384 (Del. Ch. May 12, 2014)........................................................14

*In re Universal Health Servs., Inc., Deriv. Litig.*,
2018 WL 8758704 (E.D. Pa. Dec. 10, 2018)............................................9, 11, 12 14, 15, 19

*In re UnitedHealth Grp. Inc. Deriv. Litig.*,
No. 0:06-cv-01216 (D. Minn.)............................................................................... 18

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
No. 0:06-cv-01691 (D. Minn.) ..............................................................................18

*In re WellsFargo & Co. S'holder Deriv. Litig.*,
No. 3:16-cv-05541 (N.D. Cal.) .............................................................................18

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)............................................................................8, 9, 16, 19

*McKnight v. Blanchard*,
667 F.3d 477 (5th Cir. 1982) ...................................................................................8

*Norfolk Cty. Ret. Sys. v. Cmty. Health Sys. Inc.*,
    No. 3:11-cv-00433 (M.D. Tenn.) ........................................................................18

*Owens v. FirstEnergy Corp., et al.*,
    No. 20-cv-03785 (S.D. Ohio) ..............................................................................18

*Ryskamp ex rel. Boulder Growth & Income Fund v. Looney*,
    2011 WL 1456729 (D. Colo. Apr. 15, 2011)...........................................................2

*Smith ex rel. Apollo Grp., Inc. v. Sperling*,
    2012 WL 79237 (D. Ariz. Jan. 11, 2012) ....................................3, 9, 14, 16, 18

*Sonkin v. Barker*,
    670 F. Supp. 249 (S.D. Ind. 1987) .......................................................................14

*United States v. Banco Cafetero Int'l*,
    107 F.R.D. 361 (S.D.N.Y. 1985) ............................................................................8

*United States v. U.S. Currency in the Amount of $294,600*,
    1993 WL 416698 (E.D.N.Y. Sept. 28, 1993) .........................................................8

Statutes

U.S.C. § 78u-4(b)(3) ...................................................................................................16

Utah Code § 16-10a-740 ...............................................................................................2

Plaintiffs Matthew Wallace ("Wallace") and Jason Reagan ("Reagan" and together, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion to Stay (ECF No. 21) (cited herein as "Def. Mot.").[1]  For the reasons set forth below, Plaintiffs respectfully submit that the Court should deny the motion and order Defendants to promptly respond to Plaintiffs' Verified Consolidated Shareholder Derivative Complaint (ECF No. 20) ("Consolidated Complaint," cited herein as "¶ __").

## I.   __INTRODUCTION__

This is a shareholder derivative action through which Plaintiffs seek to hold Defendants, current and former officers and members of the Co-Diagnostics, Inc. ("Co-Diagnostics" or the "Company") Board of Directors (the "Board"), accountable for breaching their fiduciary duties to the Company by permitting the issuance of false and misleading statements related to core business and failing to ensure the adequacy of the Company's internal controls over disclosure and insider trading.  Due to Defendants' wrongdoing, the Company has been and continues to be seriously harmed.

Seeking to avoid revelation of their wrongdoing at any cost, Defendants have moved for an extraordinary indefinite stay of this action pending final resolution of the related Securities Class Action (defined herein), a stay which could remain in place for *years*.  Such a stay would cause substantial prejudice to Plaintiffs, Co-Diagnostics, and to the public.  Because Plaintiffs' core fiduciary breach claims will remain live no matter the outcome of the Securities Class Action, the proposed stay would also be significantly prejudicial to the Court's interest in judicial economy

---

[1]  Although Defendants claim to speak for Nominal Defendant Co-Diagnostics, for the reasons set forth below, they lack authority to do so, and their motion is made only for their own individual interests.  The term "Defendants" as used herein does not include Co-Diagnostics and refers only to individual defendants Dwight Egan, James Nelson, Eugene Durenard, Edward Murphy, Richard Serbin, Reed Benson, and Brent Satterfield.

and the avoidance of unnecessary duplication.  Defendants identify absolutely no cognizable harm or hardship in litigating now.

Co-Diagnostics is a Utah corporation, and its internal affairs, including this derivative action, are governed by Utah law.  Utah Code § 16-10a-740 requires that a shareholder serve a pre-suit demand on a Utah corporation's board of directors to give the board an opportunity to investigate and act before a derivative suit is filed.  However, "[a]fter demand is made, the corporation's board of directors *must* conduct an investigation into the allegations in the demand and determine whether pursuing the demanded action is in the best interests of the corporation." *Ryskamp ex rel. Boulder Growth & Income Fund v. Looney*, 2011 WL 1456729, at *2 (D. Colo. Apr. 15, 2011) (emphasis added) (citation omitted).

In accordance with Utah law, Plaintiffs served litigation demands on the Board.  However, in flagrant violation of Utah law and breach of its fiduciary duties, the Board refused to even investigate the matters raised in the demands and expressly stated that *it would not investigate*. Plaintiffs will therefore survive a motion to dismiss this action under Fed. R. Civ. P. 23.1 regardless of what disposition occurs in the Securities Class Action.  Having satisfied Rule 23.1, Plaintiffs are vested with derivative standing to prosecute Co-Diagnostics' claims against Defendants and Defendants do not have the authority to decide when or whether the derivative claims against them proceed.  By intentionally refusing to discharge their clear obligation under Utah law to investigate Plaintiffs' litigation demands, Defendants have abdicated the authority to decide what is best for the Company in connection with this litigation.

Unable or unwilling to defend their lawless management of Co-Diagnostics and refusal to investigate the claims, Defendants seek a stay based on speculation regarding potential conflicts allegedly presented by litigation where Co-Diagnostics is a named defendant (the Securities Class

Action), on the one hand, and litigation where it is a nominal party on whose behalf the litigation is brought (this Action), on the other hand.  However, their arguments fail to address the reality of the situation: Co-Diagnostics is not alleged in the Derivative Action to have committed any wrongdoing; rather, it is the individual Defendants responsible for managing the Company who are the bad actors.  *See Smith ex rel. Apollo Grp., Inc. v. Sperling*, 2012 WL 79237, at \*3 (D. Ariz. Jan. 11, 2012) ("Without pointing to a tenable conflict, such an assertion merely highlights the definitional distinctions inherent in discussing the legal fiction that a corporation is a person.").  The issue of the wrongful refusal to investigate Plaintiffs' litigation demands is neither present in the Securities Class Action nor remotely relevant to it.  Because the threshold issue of derivative standing is not contingent on any facts or allegations arising from or overlapping with the Securities Class Action, there is no basis to stay this action pending the resolution of the Securities Class Action.

Courts uniformly disfavor indefinite stays. This case demonstrates why. If the Securities Class Action proceeds while this action is stayed, significant duplication of litigation efforts will be unavoidable. Document repositories will need to be re-searched, documents re-produced, witnesses re-deposed, and old discovery disputes rehashed. The better and plainly more efficient approach would be to allow this action to proceed and coordinate this action with the Securities Class Action so that the two may proceed to discovery concurrently under the organizing supervision of the same Court.

## II.   <u>STATEMENT OF FACTS</u>

### A.   <u>Alleged Wrongdoing</u>

Co-Diagnostics is a medical technology company that develops molecular tools for detection of infectious diseases, liquid biopsy for cancer screening, and agricultural applications. ¶1.  In response to the COVID-19 pandemic, Co-Diagnostics developed a diagnostic screening

test.  On February 24, 2020, the Company's COVID-19 test was one of the first of its kind to be granted regulatory approval in Europe.  ¶2.  The Company's stock price surged—reaching $17 per share in early March.  *Id*.  On April 6, 2020, the Company was the first to receive regulatory approval from the U.S. Food and Drug Administration ("FDA") for Emergency Use Authorization, allowing the tests to be used by certified clinical laboratories in the U.S.  *Id*.

In the following weeks, the Individual Defendants touted the Company's COVID-19 test as being "100% accurate" and denied media reports questioning the accuracy of the test.  ¶3.

On May 14, 2020, *The Salt Lake Tribune* reported that TestUtah.com, which used tests developed by Co-Diagnostics, "declined to join other major Utah labs in a joint experiment to confirm one another's quality."  ¶4.

The same day, Iowa Governor Kim Reynolds issued a statement stating that Iowa's State Hygenic Lab found that COVID-19 tests used by TestIowa, which included tests from Co-Diagnostics, achieved "ratings of 95% accuracy for determining positives and 99.7% accuracy for determining negatives," well below the Company's claims of "100% accuracy."  ¶5.

On this news, the Company's share price fell, closing at $22.13 per share on May 14, 2020 after hitting an intraday low of $18.35 per share.  ¶6.

During this time, and with a cloud of doubt hanging over the Company's claims of accuracy, Co-Diagnostics' directors and officers sold their personally held Company stock for material profits.  ¶7. For example, on May 23, 2020, Defendant Eugene Durenard ("Durenard") sold a total of 100,000 shares of Co-Diagnostics common stock for proceeds of over $1.8 million. *Id.*  The next day, Defendant Richard A. Serbin ("Serbin") sold 50,000 share of Co-Diagnostics common stock for proceeds of $913,025.  *Id*.  The Individual Defendants, knowing the truth of the

4

company's products and its future prospects, are taking their profits at cost to the public markets before the truth ultimately emerged.  *Id*.

       B.     **<u>Plaintiffs' Litigation Demands</u>**

On October 19, 2020, Plaintiff Wallace sent a litigation demand to the Board (the "Wallace Demand"). The Wallace Demand states that Wallace has owned shares of Co-Diagnostics since February 2020 and alleges that, as detailed above, Co-Diagnostics overstated the accuracy of its COVID-19 tests.  ¶64. The Wallace Demand asks the Board to "investigate whether any of Co-Diagnostics' officers and directors committed non-exculpable breaches of fiduciary duties or other violations of applicable law."  ¶65.

On November 11, 2020, Plaintiff Reagan served a demand ("Regan Demand") on the Board requesting the Board investigate and take action regarding substantially the same matters raised in the Wallace Demand.  ¶67.

       C.     **<u>The Board's Response</u>**

On October 29, 2020, counsel for the Board responded to the Wallace Demand, disputing whether the alleged statements were false or misleading.  ¶66.  The response stated that the Board would not investigate the allegations in the Wallace demand and concluded: "we consider the matter closed" because "***we will not conduct an investigation***" into the allegations.  *Id* (emphasis added).

Plaintiff Reagan, meanwhile, received no response to his Demand.  ¶67.  After nearly a month without any response, on December 4, 2020, to ensure receipt of his demand, Reagan's counsel sent the Reagan Demand via email to counsel for the Board.  *Id*.  Notwithstanding that the Board has been on actual notice of then Reagan Demand for at least six months, it has refused to issue a response of any kind.

D.      **The Action**

On November 24, 2020, following receipt of the letter refusing to investigate the matters raised in his demand, Plaintiff Wallace filed a shareholder derivative action on behalf of Co-Diagnostics captioned *Wallace v. Egan*, Case No. 2:20-cv-00836-JNP (the "*Wallace* Action"). The *Wallace* Action alleges that demand was wrongfully refused in violation of Utah law.  On January 25, 2021, Plaintiff Reagan filed a shareholder derivative action on behalf of Co-Diagnostics captioned *Reagan v. Egan*, Case No. 2:21-cv-00054-DBB (the "*Reagan* Action"). The *Reagan* action alleges that the Board wrongfully failed to respond to Reagan's demand.

On March 18, 2021, the Court ordered the *Wallace* and *Reagan* actions consolidated (together, the "Demand Refused Action").  Demand Refused Action, ECF No. 19.  On April 30, 2021, Plaintiffs filed their Verified Consolidated Shareholder Derivative Complaint. Demand Refused Action, ECF No. 20.  Plaintiffs allege that the Individual Defendants breached their fiduciary duties under Utah law to Co-Diagnostics and its current shareholders by causing the Company to make material misrepresentations for their own personal gain.

E.      **The Securities Class Action**

The Company's misrepresentations regarding test efficacy also precipitated the filing of a securities class action under federal law in this District against Co-Diagnostics and certain of its officers and directors, captioned *Gelt Trading, Ltd. v. Co-Diagnostics, Inc., et al.*, Case No. 2:20-cv-00368-JNP-DBP (the "Securities Class Action").   The Securities Class Action generally alleges on behalf of a class of former purchasers of Co-Diagnostics stock that the Company and its officers and directors violated the federal securities laws by fraudulently inflating the price of the Company's stock by overstating the efficacy of the Company's tests.  Securities Class Action, ECF No. 86, at ¶¶31-38.  The Securities Class Action thus seeks damages from the Company for harm to investors who purchased Co-Diagnostics stock at an artificially inflated price.

F.     **The "Demand Futility" Actions**

On September 17, 2020, Luis Aguilera filed a shareholder derivative action conceding that he made no demand for action on the Board but alleging that demand would have been futile, captioned *Luis Aguilera v. Egan et al.*, Case No. 2:20-cv-654 (the "*Aguilera* Action").   The *Aguilera* Action was voluntarily stayed on December 11, 2020. *Aguilera* Action, ECF No. 31.

On December 3, 2020, Melvyn Klein ("Klein") filed a shareholder derivative lawsuit also alleging that demand was futile, captioned *Melvyn Klein v. Egan et al.* 2:20-cv-00850-JNP (the "*Klein* Action"). The parties to the *Aguilera* Action and *Klein* Action stipulated to consolidation which the Court so ordered on April 29, 2021 (the "Demand Futility Action").  *Aguilera* Action, ECF No. 34, *Klein* Action, ECF No. 28.  Likely aware that their demand futility theory is not cognizable under Utah law and that they thus cannot possibly prevail on the merits, both Aguilera and Klein agreed to stay their actions immediately following consolidation. (*Aguilera* Action, ECFs Nos. 33-34).  The Demand Futility Action plaintiffs' decision to voluntarily stay their proceedings cannot be viewed as persuasive on this motion and is not relevant at all to whether this case should proceed because the Demand Futility Action is invalid on its face and warrants immediate dismissal.

III.   **ARGUMENT**

A.     **This Action Should Not Be Stayed Pending the Securities Class Action**

As set forth in the Consolidated Complaint, Co-Diagnostics has suffered substantial damages as a result of the breaches of fiduciary duty by Defendants, all of whom are or were directors and/or senior officers of Co-Diagnostics.  These Defendants committed clear violations of Utah law by refusing to investigate the matters raised in Plaintiffs' demands.  Now, these same individuals once again try to foist the consequences of their own misconduct upon Co-Diagnostics, by desperately claiming that the Company's defense in the Securities Class Action will somehow

be compromised by the defense of this Action.  Defendants have not, however, actually demonstrated any cognizable harm, and the motion's speculative arguments regarding the purported "risk of prejudice" to Co-Diagnostics' defense in the Securities Class Action has been attempted – and summarily rejected – many times before.  As numerous courts have explained, the argument that a public company's "interests in the derivative action conflict with its interests in the securities class action is formalistic and sacrifices pragmatic common sense." *See, e.g., In re Galena Biopharma, Inc. Deriv. Litig.*, 83 F. Supp. 3d 1033, 1044 (D. Or. 2015); *In re CytRx Corp. S'holder Deriv. Litig.*, 2015 WL 12745085, at *3 (C.D. Cal. June 24, 2015).

Here, Defendants ask that this Action be stayed indefinitely, *potentially for years*, pending final resolution of the Securities Class Action.  Def. Mot. at 1.  While Defendants characterize their proposed stay as routine (*id.* at 10), it in fact would be extraordinary.  Courts uniformly treat indefinite stays with extreme disfavor. *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (recognizing the issuance of an indefinite stay constitutes an abuse of discretion absent "pressing need"); *McKnight v. Blanchard*, 667 F.3d 477, 479 (5th Cir. 1982) ("stay orders will be reversed when they are found to be immoderate or of an indefinite duration"); *Bakken Res. Inc. v. Edington*, 2018 WL 1353271, at *4 (S.D.N.Y. Mar. 15, 2018) (rejecting proposed stay pending related proceedings that would have resulted in an "indefinite litigation hold"); *United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985) (rejecting proposed stay pending related proceedings as "too indefinite") (citing *Landis*, 299 U.S. at 257); *United States v. U.S. Currency in the Amount of $294,600*, 1993 WL 416698, at *4 (E.D.N.Y. Sept. 28, 1993) ("It is also well settled that a stay of indefinite duration cannot be granted").

There is no exception for derivative actions pending with concurrent securities actions. *See, e.g., In re CytRx*, 2015 WL 12745085, at *3 (rejecting proposed stay of derivative action pending

securities action based on the "potentially prejudicial effects of an indefinite stay"); *In re Universal Health Servs., Inc., Deriv. Litig.*, 2018 WL 8758704, at *1 (E.D. Pa. Dec. 10, 2018) (rejecting proposed indefinite stay of derivative action pending securities action); *In re Galena*, 83 F. Supp. 3d at 1043–45 (rejecting proposed indefinite stay of derivative action pending securities action); *Apollo*, 2012 WL 79237, at *3 (rejecting proposed indefinite stay of derivative action pending securities action).

Defendants bear the burden of establishing that the extraordinary stay they seek is warranted. *Bakken*, 2018 WL 1353271, at *4 (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). Courts in this circuit consider three factors in addressing a stay motion: "(1) a balancing of the prejudice to the parties; (2) whether a grant of the stay request would simplify the issues before the court; and (3) the stage of the litigation." *Lifetime Prods., Inc. v. Russell Brands, LLC*, 2013 WL 12182103, at *1 (D. Utah Mar. 5, 2013) (citing *Quest Software Inc. v. Centrify Corp.,* 2011 WL 1085789 (D. Utah Mar. 21, 2011) and denying motion to stay). As detailed below, Defendants fail to establish that any of these factors support the stay they request here.

To the contrary, the indefinite stay Defendants propose would cause substantial prejudice to Plaintiffs, to Co-Diagnostics, and to the public. It would also be significantly prejudicial to the Court's interest in judicial economy and the avoidance of unnecessary duplication of litigation. On the other hand, Defendants identify absolutely no cognizable harm or hardship in litigating this action now. *See Landis*, 299 U.S. at 255 (a stay applicant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else"); *Lifetime Prods.*, 2013 WL 12182103, at *1 (plaintiff would suffer "serious" prejudice due to "unknown term" of stay sought by defendants); *Deluca v.*

9

*GPB Auto. Portfolio, LP*, 2020 WL 7343788, at *10 (S.D.N.Y. Dec. 14, 2020) (recognizing same).  Accordingly, Defendants' request for an indefinite stay must be rejected.

1.      **A Stay Would Prejudice Plaintiffs, Co-Diagnostics, and the Public**

Courts recognize that plaintiffs have a "strong interest" in "expeditious resolution" of their claims and that any unnecessary halt of litigation is prejudicial to a plaintiff's interests. *Bakken*, 2018 WL 1353271, at *4 (rejecting indefinite stay pending related proceedings). Defendants' proposed stay is not only unsupported by law or fact, but would be prejudicial to the interests of Plaintiffs, the public, and Co-Diagnostics itself.

The potential for prejudice here is extreme given that Defendants refused to honor their unambiguous obligation under Utah law to investigate the demands and now seek an indefinite stay that plausibly may last for years. The threshold pleading issue in the Action – whether the Board was derelict in its duty to immediately commence an investigation under Utah law – is both unique to the Action and ripe for resolution.  No stay of the Action or any ruling in the Securities Class Action alters these facts.

Moreover, such a lengthy stay would create significant risk of important evidence becoming unavailable or distorted, impairing Plaintiffs' ability to prepare the strongest possible case for trial. *See, e.g.*, *D'Omilia Plastic Surgery, PC v. Sweeton*, 2013 WL 6070037, at *4 (D.N.J. Nov. 18, 2013) (rejecting indefinite stay pending related proceedings and observing that "with the passage of time, witnesses become unavailable, memories of conversations and dates fade, and documents can be lost or destroyed") (citation and internal quotation marks omitted); *Citibank, N.A. v. Hakim*, 1993 WL 481335, at *2 (S.D.N.Y. Nov. 18, 1993) (recognizing same).

Courts recognize that the plaintiffs in a derivative action would be prejudiced by an indefinite and protracted stay, and that discovery in a related securities action would be insufficient to protect the plaintiff's interests. For instance, in *Universal Health Services*, the Eastern District

of Pennsylvania denied a motion to stay a derivative action pending resolution of a related securities action due, in part, to the "possibility that [p]laintiffs [would] be harmed by an indefinite stay because of potential loss of evidence." 2018 WL 8758704, at *1 n.1.  If Defendants' proposed stay is granted here, Plaintiffs may be prevented from taking necessary discovery for *years* during which time "memories fade and witnesses may become unavailable, irrevocably impeding the discovery process." *Id.*; *see also Galena*, 83 F. Supp. 3d at 1043 ("the passage of time inevitably impairs the discovery process, especially as to the memories of witnesses") (internal quotation marks and citation omitted).

Any suggestion that Plaintiffs' interests here will be protected by possible future discovery in the Securities Class Action is demonstrably false. Indeed, in establishing Defendants' breaches of fiduciary duties, Plaintiffs' primary focus in this derivative action will be on the refusal to investigate the matters raised in the demands, and the knowledge and conduct of the Co-Diagnostics Board regarding the misleading statements, all facts that are not at issue, and are indeed irrelevant, in the Securities Class Action.  For this reason, courts reject the argument that a derivative plaintiff's interests would be adequately protected by discovery taken in a related securities action, recognizing that "[a]lthough there will be significant overlap in witnesses in the two cases, not all witnesses will be the same and those witnesses that are in fact the same may not be asked questions in the securities class action that Plaintiffs would ask in the derivative litigation." *Universal HealthServs.*, 2018 WL 8758704, at *1 n.1; *see also Galena*, 83 F. Supp. 3d at 1043 (rejecting argument that discovery obtained in securities action would alleviate prejudice to a derivative plaintiff); *Carpenters Pension Fund of Ill. v. Neidorff*, 2019 WL 3037194, at *1 (E.D.Mo. July 11, 2019) ("not all witnesses will necessarily be the same and those witnesses that are the same may not be asked questions during discovery in the securities action

that plaintiffs here may want answered. Additionally, the documentary evidence sought in the securities action may not encompass all of the documentary evidence sought by plaintiffs here").

Defendants' proposed stay would severely prejudice Co-Diagnostics. Co-Diagnostics has an interest in recovering damages for the substantial harm caused by Defendants' breaches of fiduciary duty and other violations of law in as timely a manner as possible. *See, e.g.*, *In re BofI Holdings, Inc. S'holder Litig.*, 2018 WL 3993358, at *4 (S.D. Cal. Aug. 21, 2018) ("proceeding with Plaintiffs' currently ripe claims now—rather than waiting years for the other lawsuits to conclude—might allow BofI to obtain some relief much sooner, which would be in the company's interest").  Plaintiffs are pursuing this Action not only to recover damages for past harm incurred by the Company, but also to ensure that Co-Diagnostics adopts necessary reforms to ensure the Company maintains adequate internal controls and risk-management systems going forward.

Given that this Action alleges clear misrepresentations regarding the Company's core business, that certain Defendants used their duplicity to execute insider stock sales, and that the same wrongdoers violated Utah law by refusing to investigate the demands and are now attempting to block litigation of the Company's claims against them, only the immediate and vigorous prosecution of Defendants' breaches of fiduciary duty can ensure the Board-level corporate reckoning that is plainly necessary.  Indeed, in other derivative actions involving allegations of severe internal controls deficiencies, courts have recognized that a stay would prejudice corporate interests by delaying such a reckoning. *See, e.g.*, *CytRx Corp.*, 2015 WL 12745085, at *3 (denying motion to stay derivative action in favor of securities action where "an extended delay would allow CytRx's defective internal controls to continue with no recourse"); *Universal Health Servs.*, 2018 WL 8758704, at *1 n.1 (denying motion to stay derivative action

in favor of securities action where "a long delay would allow the company's defective internal mechanisms, if any, to continue unchecked"). Moreover, given Co-Diagnostics' importance to the state of Utah's and other states' COVID-19 responses, the expeditious achievement of necessary reforms also bears significantly on the public interest.

2.            **A Stay Would be Contrary to Judicial Economy**

Defendants argue at length that the interests of judicial economy support a stay, relying principally on a string of fundamentally inapposite cases staying "tag-along" demand futility derivative cases wherein no demand was made, and the primary theory of liability is that the board would be interested in a demand due to the same wrongdoing alleged in the securities suit. In those types of cases, where resolution of the underlying securities suit has the potential to obviate derivative claims entirely, it is true that a stay can sometimes promote judicial economy. ***But the resolution of the Securities Class Action cannot resolve this case***. The Board committed a clear violation of Utah law by refusing to investigate Plaintiffs' demands, and as such, regardless of the outcome of the Securities Class Action, Plaintiffs will prevail on a motion to dismiss pursuant to Fed. R. Civ. P. 23.1.  Thus, Plaintiffs allege that Defendants have committed breaches of fiduciary duty that are separate and apart from any misstatements.  Plaintiffs' claims are tethered to substantial corporate harm that has already occurred, and Plaintiffs seek to recover damages that Co-Diagnostics has already incurred and are completely unrelated to any potential liability in the Securities Class Action.   By contrast, the "tag-along" authority relied on by Defendants exclusively involves situations in which no demand was made, and the demand futility theory is simply a repetition of the theory of liability in the securities action.

Here, the Securities Class Action therefore cannot obviate Plaintiffs' claims.[2] In these circumstances, where meaningful derivative claims are certain to remain standing and require litigation regardless of the outcome in related securities litigation, it makes little sense to freeze the litigation for an indefinite period only to retread the same field of discovery—re-searching document repositories, re-deposing witnesses, rehashing old discovery disputes—upon conclusion of the securities suit. Courts have consistently recognized as much. *Neidorff*, 2019 WL 3037194, at *2 (stay of derivative case is inefficient where company would be "subject to duplicative discovery, possibly years down the road"); *CytRx*, 2015 WL 12745085, at *3 ("allowing both cases to proceed in their normal course would allow the respective parties to coordinate certain stages of the litigation, such as discovery, providing for greater judicial economy and efficiency"); *Apollo*, 2012 WL 79237, at *3 ("allowing the two actions to proceed at the same time will actually conserve Apollo's financial resources"); *Sonkin*, 670 F. Supp. at 253 ("A stay of only the derivative action would run contrary to the objective of an orderly, coordinated progression of discovery in all of these cases.").

The better approach for promoting judicial economy and conserving party and judicial resources here is for this action and the Securities Class Action to proceed in a coordinated

---

[2]  In non-"tag-along" derivative suits like this one, courts recognize that a stay will do little or nothing to avoid duplication or promote judicial economy and, therefore, routinely *deny* motions to stay. *See, e.g.*, *Universal Health Servs.*, 2018 WL 8758704, at *1 n.1 (stay not appropriate where derivative action raised issues "not at issue in the federal securities action"); *In re Molycorp, Inc. S'holder Deriv. Litig.*, 2014 WL 1891384, at *5 (Del. Ch. May 12, 2014)(stay not appropriate where "a derivative action . . . seeks distinct damages for alleged breaches of fiduciary duty" rather than simply "indemnification for possible securities laws violations"); *In re China Agritech, Inc. S'holder Deriv. Litig.*, 2013 WL 2181514, at *27 (Del. Ch. May 21, 2013) (recognizing that where a derivative action is not "primarily an indemnification-oriented action," the derivative case is "the dog, not the tail" and should move forward expeditiously); *Sonkin v. Barker*, 670 F. Supp. 249, 254 (S.D. Ind. 1987) (denying a stay where "this derivative action is not a mere reiteration of the claims asserted in the other litigations").

fashion. This is especially true given that all the actions are pending before this Court, which has the obvious ability to effectively oversee coordinated litigation efforts. *See, e.g.*, *Universal Health Servs.*, 2018 WL 8758704, at *1 n.1 (where "both cases are before the same judge . . . [a]ny discovery issues can be resolved in a consistent manner or even consolidated to promote efficiency"; "[t]o stay this matter until the conclusion of the securities class action might in fact subject [the company] to duplicative discovery"); *Galena*, 83 F. Supp. 3d at 1044 ("it is more efficient for [the company] to litigate the securities class action and the derivative cases simultaneously. Both cases are before the same judge in the same court, and discovery issues can be resolved in a consistent manner").

The court's decision in *In re American Apparel, Inc. S'holder Deriv. Litig.,* 2012 WL 9506072, at *1 (C.D. Cal. July 31, 2012), is particularly instructive.  In that action, which involved related derivative and securities actions still in their pleading stages, the court refused to stay the derivative case, and found that setting the pleadings in both cases and thereafter coordinating discovery presented the most efficient path forward. *Id.* at *47. The court reasoned that "[n]either defendants' defense in the securities fraud case nor the shareholder derivative action will be prejudiced by resolving the pleadings in both actions," and that "once the pleadings are set" the defendants would not "be prejudiced by propounding and/or responding to discovery that will be usable in both actions." *Id.* at *46. The court therefore concluded that "[f]rom a case management perspective, there is substantial benefit to settling the pleadings and determining whether plaintiffs are able successfully to state a claim" and that "once the pleadings in this action and the securities fraud class action are set, consolidating discovery in the two action[s] will result in substantial case management benefits." *Id.* at *47.  The same can be accomplished here.[3]

---

[3] If this approach were adopted, Plaintiffs would stipulate to a stay of discovery until the pleadings

3. **Defendants Identify No Cognizable Hardship in Being Required to Go Forward**

Due to the significant threat of prejudice to Plaintiffs, Co-Diagnostics, and the Court, Defendants "must make out a clear case of hardship or inequity in being required to go forward" to have any hope of prevailing on their motion. *Landis*, 299 U.S. at 255. They have failed to do so. Indeed, Defendants' only prejudice argument, that "requiring the Individual Defendants to defend themselves in their individual capacities in this lawsuit *may* pit their interests against those of the Company (Def. Mot. at 14, emphasis added), has repeatedly been rejected by courts as overly "formalistic" and at odds with practical realities.[4]  As the Court in *Apollo* explained, for example:

> While the concept that the corporation is a Defendant in one action . . . and the Plaintiff in another action . . . appears at first glance to be a conflict, an actual analysis of the possible conflict *merely highlights the differences in the procedural posture of the two actions*. A corporation can only act through its Officers and Directors. If its Officers and Directors committed wrongdoing, acting through the corporation, the corporation is liable to its shareholders. Meanwhile, if the Officers and Directors committed wrongdoing that caused injury to the corporation, the Officers and Directors are liable to the corporation. In the former instance, the shareholders have to prove the wrongdoing of the Officers and Directors who were acting on behalf of the corporation and, in the latter, a different shareholder, acting on behalf of the corporation, must show that the Officers and Directors engaged in wrongdoing that harmed the corporation. *When analyzed in this light, the Court cannot ascertain any direct conflict between the shareholders seeking damages from the corporation based on the wrongdoing of its Officers and Directors in one action, and the shareholder seeking to protect the corporation's rights against the wrongdoing of its Officers and Directors in another action.*

2012 WL 79237, at *2 (emphasis added).

The District of Oregon in *Galena* agreed, explaining:

> Both the securities class action and this derivative action are in such early stages that it is not known whether the officers and directors committed any wrongdoing. Thus, any "conflict" exists only under a purely formalistic construct based on the

---

in both actions are set.  Defendants' arguments pertaining to a discovery stay under 15 U.S.C. § 78u-4(b)(3) (the "PSLRA") are therefore moot.  Def. Mot. at 12.

[4] Defendants' "vague concerns about litigation costs, . . . [do] not establish[] a clear case of hardship or inequity in being required to go forward."  *Deluca*, 2020 WL 7343788, at *10.

fact that Galena is a nominal plaintiff in the derivative action and an actual defendant in the securities class action.   After the Court looks beyond this formalistic construct, "the Court cannot ascertain any direct conflict between the shareholders seeking damages from the corporation based on the wrongdoing of its Officers and Directors in [the securities class] action, and the shareholder seeking to protect the corporation's rights against the wrongdoing of its Officers and Directors in [the derivative] action."   Thus, the Moving Defendants fail to show a genuine conflict between Galena's defense in the securities class action and its interest in the derivative class action.

83 F. Supp. 3d at 1045 (internal citations omitted); *Neidorff*, 2019 WL 3037194, at *2 (rejecting conflict argument as a "formalistic construct" and not "a genuine conflict").   There is likewise no present conflict here – an inconvenient reality for Defendants that is fatal to the Motion.

In *Seidel v. Pub. Serv. Co. of New Hampshire*, 616 F. Supp. 1342, 1350 (D.N.H. 1985), the court refused to stay a derivative action based on "speculation as to the effect the continuance of the derivative action litigation would have on . . . the defense by those named therein of the pending class action complaints."   Later, in *Keyser v. Commonwealth Nat'l Fin. Corp.*, 120 F.R.D. 489, 492 (M.D. Pa. 1988), the court stated that "the better reasoned and predominant rule of law is to look behind the 'surface duality' of [class and derivative claims] and allow them to proceed together unless an actual conflict emerges"); *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 2005 WL 280345, at *6 (S.D. Ind. Feb. 2, 2005) (denying motion to stay a "precursor" to a derivative action, and noting that "[i]t is not at all unusual for securities fraud and related shareholder derivative cases to proceed along parallel tracks, without interfering with one another.").

If Defendants' argument that a supposed "conflict" precludes simultaneous prosecution of related derivative and securities actions were correct, then coordinated proceedings would rarely, if ever, occur.   Instead, the opposite is true: it is extremely common for securities fraud

and related shareholder derivative actions to proceed concurrently.[5]  Here, Defendants identify

no case of actual conflict with real world consequences.  The only prejudice they can identify is

purely hypothetical, nonexistent and based on the "formalistic construct" criticized in *Apollo*,

*Galena*, and *Neidorff*.  As such, there is no risk of any so-called "conflict" if the Court resolves

the pleadings and advances this case through discovery.  *See Seidel.*, 616 F. Supp. at 1350

(refusing to stay a shareholder derivative action based on "speculation as to the effect the

continuance of the derivative action litigation would have on . . . the defense by those named

therein of the pending class action complaints").

In fact, the parties can litigate this Action for an extended period before any real risk of

conflict with Co-Diagnostics' defenses in the Securities Class Action were to materialize, ***if at all***,

since the first tasks in the Action involves motion practice related to the wrongful demand refusal

and discovery that will create no risk to Co-Diagnostics' defenses in the Securities Class Action.

In the event that such risks were to actually materialize at some point in the future, they can be

addressed through time-tested and appropriately targeted case management techniques.  As the

U.S. District Court for the Eastern District of Pennsylvania noted recently when addressing this

same issue:

> Further, the Court is not convinced that the stay requested is in the company's best
> interests. The Court acknowledges that allowing the derivative litigation to proceed

---

[5]  *See generally, e.g.*, *In re Bank of Am. Corp. Sec., Deriv., & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 1:09-md-02058-PKC (S.D.N.Y.); *Owens v. FirstEnergy Corp., et al.*,No. 20-cv-03785 (S.D. Ohio) and *Emps. Ret. Sys. of the City of St. Louis v. Jones, et al.*, No. 20- cv-04813 (S.D. Ohio); *Hefler v. Wells Fargo & Co.*, No. 3:16-cv-05541 (N.D. Cal.) and *In re WellsFargo & Co. S'holder Deriv. Litig.*, No. 3:16-cv-05541 (N.D. Cal.); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208 (N.D. Cal.) and *In re Apple Inc., Deriv. Litig.*, No. 5:06-cv-04128 (N.D. Cal.);*In re Juniper Sec. Litig.*, No. 5:06-cv-04327 (N.D. Cal.) and *In re Juniper Deriv. Actions*, No. 5:06-cv-03396 (N.D. Cal.); *Norfolk Cty. Ret. Sys. v. Cmty. Health Sys., Inc.*, No. 3:11-cv-00433 (M.D. Tenn.) and *In re Cmty. Health Sys., Inc. S'holder Deriv. Litig.*, No. 3:11-cv-00489 (M.D. Tenn.); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 0:06-cv-01691 (D. Minn.) and *In re UnitedHealth Grp. Inc. Deriv. Litig.*, No. 0:06-cv-01216 (D. Minn.).

would draw funds from UHS and might affect its defense in the securities class action. But this will not cause significant harm. Instead, allowing both cases to proceed better promotes judicial economy and efficiency. To stay this matter until the conclusion of the securities class action might in fact subject UHS to duplicative discovery requests. Both cases are in the beginning stages of litigation—discovery has not commenced and the Court has not set trial dates in either matter. Thus, allowing both cases to proceed at this time would allow the parties to coordinate their discovery efforts. What is more, there is concern about the effect of an indefinite stay on UHS. If Plaintiffs' allegations concerning UHS's internal policies and practices are true, a long delay would allow the company's defective internal mechanisms, if any, to continue unchecked.

*In re Universal Health Servs.*, 2018 WL 8758704, at *1 n.1.

Defendants have failed to demonstrate that any actual, rather than hypothetical, conflict exists in permitting this action and the Securities Class Action to proceed concurrently.  They have, therefore, failed to carry their burden to "make out a clear case of hardship or inequity in being required to go forward," *Landis*, 299 U.S. at 255, and their motion should be denied.

IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety and order Defendants to respond to the Amended Complaint.

Dated: June 10, 2021

**TRUE WEST LEGAL**

/s/ Zachary Weyher
Zachary J. Weyher (10846)
1953S. 1100 E., #521524
Salt Lake City, Utah
Telephone: (801) 750-5425
E-mail: zachweyher@gmail.com

**JONES WALDO**

/s/ Matthew Muir
*(Signed by Filing Attorney with permission of Mr. Muir)*
/s/ Zachary Weyher
Matthew Muir
170 S. Main St.

Salt Lake City, UT 84101-1644
Telephone: (801) 534-7483
Facsimile: (801) 328-0537
Email: MMuir@joneswaldo.com

*Liaison Counsel for Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, New York 10019
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

**THE WEISER LAW FIRM, P.C.**
James M. Ficaro
Four Tower Bridge
200 Barr Harbor Dr., Suite 400
West Conshohocken, PA 19428
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062
Email: jmf@weiserlawfirm.com


*Co-Lead Counsel for Plaintiffs*