**Ryan B. Hancey, Esq.**, rhancey@keslerrust.com, Utah State Bar Number 9101
**J. Adam Knorr, Esq.**, aknorr@keslerrust.com, Utah State Bar Number 15183
**Attorney for Defendants**
**Kesler & Rust**
**68 South Main Street, Suite 200**
**Salt Lake City, Utah 84101**
**(801) 532-8000 (TEL.)**

**Christopher P. Milazzo, Esq.**, cmilazzo@cmfllp.com, Pro Hac Vice
**Attorney for Defendants**
**Carmel, Milazzo & Feil LLP**
**55 West 39th Street, 18th Floor**
**New York, New York 10018**
**(212) 658-0458 (TEL.)**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MATTHEW WALLACE, derivatively on behalf of CO-DIAGNOSTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DWIGHT H. EGAN, REED L. BENSON, BRENT SATTERFIELD, EUGENE DURENARD, EDWARD MURPHY, JAMES NELSON, and RICHARD S. SERBIN <br><br> Defendants. <br><br> And <br><br> CO-DIAGNOSTICS, INC., <br><br> Nominal Defendant | Case No. 2:20-cv-00836-JNP <br><br><br> **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR STAY OF ACTION** <br><br><br> Judge Jill N. Parrish |
| JASON REAGAN, derivatively on behalf of CO-DIAGNOSTICS, INC., <br><br> Plaintiff, <br><br> v. | |

DWIGHT H. EGAN, REED L. BENSON, BRENT SATTERFIELD, EUGENE DURENARD, EDWARD MURPHY, JAMES NELSON, and RICHARD S. SERBIN

    Defendants.

    And

CO-DIAGNOSTICS, INC.,

    Nominal Defendant

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

RESPONSE TO STATEMENT OF FACTS .......................................................................... 2

ARGUMENT ........................................................................................................................... 3

    A.    Plaintiffs Fail to Identify Any Harm Caused by a Stay .......................................... 3

        1. Reformation of Corporate Governance and Internal Procedures Would be
           Premature ................................................................................................................ 4

        2. No Harm Will Be Caused Through an Ostensible Loss of Evidence ................. 5

    B.    Plaintiffs Misstate and Fail to Rebut Defendants' Argument Concerning
        Judicial Economy ................................................................................................... 8

        1. Plaintiffs Have Failed to Rebut the Harm to Co-Diagnostics ............................. 8

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                          **Page**

*Apollo Group, Inc. v. Sperling*
2012 WL 79237, at *1 (D. Ariz. 2012) .................................................................................. 9

*Breault v. Folino*
2002 WL 31974381 (C.D. California 2002) .......................................................................... 9

*Carpenters Pension Fund of Ill. V. Neidorff*
2019 WL 3037194 (E.D. Mo. 2019) ...................................................................................... 5

*City of Austin Police Retirement System v. ITT Educational Services, Inc.*
2005 WL 280345 (S.D. Ind.) .................................................................................................. 9

*De'Omilia Plastic Surgery, PC v. Sweeton*
2013 WL 6070037 (D.N.J. 2013) .......................................................................................... 5

*In re BofI Holdings, Inc. S'holder Litig.*
2018 WL 3993358 (S.D. Cal. 2018) ...................................................................................... 6

*In re China Agritech, Inc. Shareholder Deriv. Litig.*
2013 WL 2181514 (Del. Chanc. 2013) .................................................................................. 8

*In re Galena Biopharma, Inc. Derivative Litigation*
83 F. Supp.3d 1033 (D. Oregon 2015) ............................................................................. 5, 10

*In re Molycorp, Inc. Shareholder Deriv. Litig.*
2014 WL 1891384 ................................................................................................................. 8

*In re Universal Health Servs., Inc., Deriv. Litig*
2018 WL 8758704 (E.D. Pa. 2018) ................................................................................... 6, 8

*N.A. v. Hakim*
1993 WL 481335 (S.D.N.Y. 1993) ........................................................................................ 5

*Sonkin v. Barker*
670 F.Supp. 249 (S.D. Ind. 1987) .......................................................................................... 8

Defendants Dwight Egan ("Egan"), James Nelson ("Nelson"), Eugene Durenard ("Durenard"), Edward Murphy ("Murphy"), Richard Serbin ("Serbin"), Reed Benson ("Benson"), and Brent Satterfield ("Satterfield") (collectively, the "Individual Defendants" or "Defendants") respectfully submit this brief in reply to the opposition filed by Plaintiffs to Defendants' motion to stay this action pending the resolution of the underlying securities class action lawsuits currently pending.

## **INTRODUCTION**

Plaintiffs' introduction perfectly explains why this action should be stayed, describing the action as one to ostensibly hold the Defendants "accountable" for "permitting the issuance of false and misleading statements," putting the cart before the horse. The pending class action suits will determine whether any of the alleged statements made were false and misleading. To be clear, this action is not a securities fraud action and is not the proper action to determine the same, it is a primarily indemnification-oriented derivative suit. For Plaintiffs to prevail, they would have to establish false and misleading statements were made. The hypothetical establishment of the same would cut directly against the company's defenses in the securities class action lawsuit. Thus, Plaintiffs' prosecution of this action undermines the company's position in the securities class action lawsuit where the potential liability in that case is the basis for the ostensible damage caused to the company alleged here. Plaintiff has pit itself against the company on whose behalf it professes to sue.

Plaintiffs have either failed to comprehend the arguments set forth by Defendants in their moving brief or chose to ignore them and act as though the points were not made (because they understand those arguments necessitate a stay). They also misstate the basis and purpose of both this action and the securities class action suit in a brazen attempt to force simultaneous litigation of identical issues. Plaintiffs are misguided both with respect to the facts of the cases and with respect to what is actually in the best interest of the company and its shareholders. First, Plaintiffs somehow argue that a resolution of the

1

securities class action in favor of Co-Diagnostics – that no false or misleading statements were made – would have no effect on this litigation. But the whole basis of this suit is to recover alleged damages in connection with ostensible securities violations over which Co-Diagnostics was sued in the securities class action. If no securities violations are found in the securities class action suit, there can be no liability here. Plaintiffs concede this by falsely arguing that this case is *actually* about a failure to investigate pursuant to their demand letters. As discussed below, this is provably false both based on the contents of the parties' communications and based on the actual allegations in the Complaint. Indeed, neither of Plaintiffs' causes of action seek redress for the ostensible failure to investigate. Instead, they are both based upon the alleged securities violations.[1] Accordingly the motion should be granted and this action should be stayed pending the resolution of the securities class action lawsuit.

## RESPONSE TO STATEMENT OF FACTS

In their statement of facts, Plaintiffs have made assertions regarding their pre-suit demands letters which, while totally irrelevant for the purposes of this motion, are a distortion of the truth. On or about October 19, 2020, Plaintiff Wallace issued a demand letter to the Co-Diagnostics (the "Demand Letter"). (Milazzo Dec. Exh. A). The Demand Letter contains allegations which mostly mirror the allegations in the instant complaint and those alleged in the securities class action (in strikingly similar language.) The Demand Letter sets forth those same allegations concerning the allegedly false and misleading statements, which, as described in the motion to dismiss the securities class action lawsuit, are not false but are simple recitations of the findings of an independent laboratory analysis of Co-Diagnostics' COVID-19 test. The Demand Letter closes with a statement that the Board of Directors "investigate whether any of Co-Diagnostics' officers and directors committed non-exculpable breaches of fiduciary duties or other violations of applicable law" as it pertains to those allegations. (*Id.*).

---

[1] Indeed, an alleged failure to investigate pursuant to a demand letter will not sustain an action for monetary damages against corporate officers in a case such as this.

2

On October 29, 2020, Co-Diagnostics responded in writing (the "Response Letter"). *See* Milazzo Dec., attached as Exh. B. The Response Letter noted that no breach of fiduciary duties was raised in the Demand Letter. The Response Letter also corrected noted Wallace had mischaracterized the statements of Dr. Satterfield regarding the accuracy of the COVID-19 test, clarifying that he did not opine on the accuracy of the test but reported the results of outside evaluations. To be clear, Dr. Satterfield reported that the "tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe," which is irrefutably true. The Response Letter *also* invited Wallace to provide the company with information suggesting that the FDA and European studies did not reach such a conclusion, which he declined to do. Regarding the May 1, 2020 Press Release, the Response Letter corrected the characterizations made in that the conclusions were not attributable to Dr. Satterfield and the Press Release simply announced the results (and accurately so – the Press Release did nothing more than announce that the test achieved the results reported).

Plaintiffs take the Response Letter out of context, alleging Co-Diagnostics stated "we consider the matter closed because we will not conduct an investigation into the allegations." (Opposition, p.5) By this, Plaintiffs intend to convey that Co-Diagnostics refused to investigate and closed the matter as a result of their refusal to investigate. Instead, the Response Letter noted the mischaracterizations which created a false premise. It then stated that "[b]ased on our investigation, the actual statements made are and were true and correct at the time they were made." (Milazzo Dec. Exh. B, p.2)

## ARGUMENT

### A. Plaintiffs Fail to Identify Any Harm Caused by a Stay

Plaintiffs have not identified any harm from a stay pending the resolution of the securities fraud class action lawsuit. Instead, they make generalized statements (*i.e.* statements concerning harm caused by delaying discovery) without reference to the manner by which they apply to this case, citing caselaw

3

without regard to their factual details. By contrast, Defendants have raised very real and particular harms which will be suffered should this suit not be stayed, all of which Plaintiffs have entirely ignored and failed to address.

*1. Reformation of Corporate Governance and Internal Procedures Would be Premature*

Plaintiffs first argue that the potential for prejudice "is extreme given that Defendants refused to honor their unambiguous obligation under Utah law to investigate the demands." (Opposition p. 10) Plaintiffs did not describe what actual prejudice this might cause, even if true – which it is not. Not only did their demand letters fail to raise any breaches of fiduciary duties, the company *did* investigate the matters raised and replied in kind, stating that it was of the belief that no false or misleading statements were made, and that the statements made were true (and mischaracterized by Wallace in his Demand Letter). Nevertheless, Defendants maintain the argument is a red herring and misstates the purpose of this lawsuit. Indeed, Plaintiffs fail to allege any damage suffered or any damage the company would suffer if the action were stayed.

What Plaintiffs fail to realize is that any steps to overhaul the company's policies, procedures, practices, or otherwise would be premature prior to a determination of the securities fraud class action lawsuit. The resolution of that case, most immediately the pending motion to dismiss, and, if the company must litigate, a determination whether any false or misleading statements were made, must occur before there is a *judicial* determination that the controls and operations of the company should be altered. Therefore, Plaintiffs again put the cart before the horse to litigate for relief which is entirely dependent on the outcome of the securities fraud class action lawsuit. If the motion to dismiss is successful, or if the case is litigated and no false or misleading statements are found, then there would have been no reason to make any changes to the company (especially in a lawsuit by only two of its shareholders who clearly do not have the company's best interests in mind.) In that event, no changes should be made to the company.

Moreover, as discussed above, this is not a case about a failure or refusal to investigate – the company *did* investigate but Wallace was unhappy with (and mischaracterized) the company's response.

This is not a case about a refusal to investigate and it is not about a need to address anything prior to the resolution of whether there was wrongful conduct. This argument does not weigh against a stay.

2. *No Harm Will Be Caused Through an Ostensible Loss of Evidence*

Plaintiffs falsely argue that they will be prejudiced by a delay of discovery. They misguidedly cite caselaw noting that "memories fade and witnesses may become unavailable" without actually arguing that to be the case or a potential here. Their reliance on cases such as *In re Galena Biopharma, Inc. Derivative Litigation* is misplaced and does not provide any weight against a stay. 83 F. Supp.3d 1033, 1043 (D. Oregon 2015).[2] In *Galena*, the Court noted that "not all witnesses will necessarily be the same" or be asked the same questions and that the documents sought in the securities class action may not encompass all of the documents sought by those plaintiffs. *Galena*, F. Supp.3d at 1043. This was found given those plaintiffs' arguments that witnesses would scatter, documents would be lost, and memories would fade. *Id.* Even given those, the Court only found a "fair possibility" of harm and held this did not weigh heavily against a stay.[3] Plaintiffs failed to raise even a single hypothetical possibility that there would be any

---

[2] Plaintiffs also mistakenly rely upon *De'Omilia Plastic Surgery, PC v. Sweeton*, 2013 WL 6070037 (D.N.J. 2013), which is completely inapposite as there was no pending parallel litigation. The defendant had already accepted a plea deal and sought a stay only with regard to any *potential* future criminal investigations. Thus there was no pending action from which to gain discovery which otherwise could have potentially become stale or lost. The *De'Omilia* plaintiffs also alleged that particular witnesses had already been lost, while the instant Plaintiffs make no such argument here.
Plaintiffs similarly rely in error upon *Citibank, N.A. v. Hakim*, 1993 WL 481335 (S.D.N.Y. 1993) which also pertained to an unindicted defendant. Therefore, a parallel case in which discovery otherwise might have been gained was only a "fortuitous" possibility. Further, the plaintiff had alleged that several other witnesses, along with certain assets and evidence, had already fled to Columbia. The Court also reasoned that because no criminal action had been instituted, there was no basis to find a commonality of issues to be simultaneously litigated. Again, *Carpenters Pension Fund of Ill. V. Neidorff*, 2019 WL 3037194 (E.D. Mo. 2019) is not applicable here as the underlying conduct had allegedly occurred four years prior, and the plaintiffs made the specific argument that based on that extended lapse of time, witnesses memories were more likely to fade. No such argument has been made, or can be made here.

[3] In addition, the *Galena* case involved three different lawsuits, defendants other than board members, and varying legal issues from the basic securities violations alleged in the class action, to corporate issues being litigated in Delaware, SEC investigations, and a multivariance of independent legal theories set forth in the derivative action. By contrast, the issues presented in the two lawsuits are identical and Plaintiffs' attempt to make this a case about an ostensible failure to investigate is a red herring and ignores the realities of this lawsuit as one seeking redress over the precise alleged securities violations to be litigated in the securities fraud class action lawsuit.

prejudice in discovery and have failed to make any factual argument that any witnesses would be lost or documents destroyed.  Instead, they seem to argue that as a matter of law, documents and witnesses will be lost as a result of a stay.  That is not the case; if it were it would obviate this factor and render it permanently against movants, which is obviously not so.  While they also cite to *In re Universal Health Servs., Inc., Deriv. Litig.* for the proposition that, despite significant overlap in witnesses in the two cases, not all witnesses will be the same and the questions would be different, they have not actually said how that proposition is relevant here and have not identified any witnesses which would be required here but not in the class action, or vice versa, or what questions might be different. 2018 WL 8758704, at *1 (E.D. Pa. 2018)[4]  Thus, Plaintiffs have failed to raise any harm to them, and this factor cannot be determined in their favor.

In addition, while the securities class action in *Galena* simply alleged violations of federal securities laws while the derivative action asserted a number of different claims, several of which would not necessarily be resolved in the class action – there were totally different legal theories at issue.  In this action, both of the claims are securities-related claims that will be resolved in the securities fraud class action lawsuit.

Next, *In re BofI Holdings, Inc. S'holder Litig.*, 2018 WL 3993358 (S.D. Cal. 2018) is totally inapplicable to this case and does not stand for the proposition that, as Plaintiffs quote "proceeding with Plaintiffs' *currently ripe claims now* – rather than waiting years for the other lawsuits to conclude might allow BofI to obtain some relief much sooner, which would be in the company's interest." (Opposition at p.12) (emphasis added).  The facts of that case are totally at odds with those here.  At the time of the BofI holding, the case was already four years old.  *BofI Hold.*, WL 3993358 at *3.  There, it was plaintiffs seeking a stay to save their claims from dismissal for lack of ripeness, not a stay pending resolution of the

---

[4] In addition, the issues in *In re Universal Health Services, Inc., Deriv. Litig.* differed significantly from the issues to be litigated in the securities fraud case.  Further, the Third Circuit has employed a more restrictive view on stays than other Circuits.

6

class action but to defer a deadline amend their complaint to assert claims associated with the outcome of the class action. It was only those claims which were *not* at issue in the securities class action which the Court determined to be "ripe."

The stay in contest in *BofI Holdings* was also complicated by a newly filed appeal, and as is common knowledge, the standard for a stay pending appeal is much different than the stay sought here. *BofI Hold., Inc.* WL 3993358 at *3. In fact, the *BofI Holdings* Court noted that plaintiffs' cited cases were "run-of-the-mill circumstances of parallel securities fraud and derivative lawsuits in which the securities fraud litigation was proceeding on the merits…at the time the stay was requested." *Id.* at *4. Thus, Plaintiffs inadvertently rely on a case which provides that the exact type of stay sought by Defendants here *is* prudent based on the fact that the claims asserted are contingent on the outcome of the class actions and therefore not yet ripe.

Ultimately, even given the potential discovery shortfalls actually addressed in *Galena*, that Court *still* found that this factor did not weigh significantly against a stay "because [p]laintiffs likely will eventually have access to discovery taken in the securities class action and because [d]efendants will remain under an obligation to preserve evidence." Plaintiffs have not argued that will not happen here.

Not only have Plaintiffs failed to identify exactly *how* they would be prejudiced, but they falsely argued their "primary focus in this derivative action will be on the refusal to investigate the matters raised in the demands, and the knowledge and conduct of the Co-Diagnostics Board regarding the misleading statements." (Opposition p.11). First, Plaintiffs somehow argue that the knowledge and conduct of the Co-Diagnostics Board regarding the alleged misleading statements is irrelevant in the securities fraud class action lawsuit, which purports to seek redress for those alleged misleading statements. The argument makes no sense, as that will be at issue in the Securities Class Action. In addition, this argument misframes the scope of this lawsuit and the facts of this case. This is *not* a case concerning an ostensible refusal to

7

investigate. None of the causes of action or alleged damages pertain to that at all. More importantly, the company *did* investigate the claims and determined the statements were true – and they are true. Wallace was invited to provide additional information to support his contention; he declined to do so.

Because Plaintiffs have failed to properly frame their argument in the context of this primarily indemnification-oriented action, they have failed to show they will be harmed and a stay should be granted.

### B. Plaintiffs Misstate and Fail to Rebut Defendants' Argument Concerning Judicial Economy

Plaintiffs argue that a stay would prejudice them, the company, and the public. This could not be further from the truth. They also argue, to escape the consequences of the tag-along nature of this case, that the primary theory of liability in this case involves the ostensible refusal to investigate, which has already been established as false, and each of the cases cited are once again inapplicable.[5] Plaintiffs' real argument towards this factor seems to be that judicial economy would be served by coordinating discovery in the two cases. However, this does not answer the question of whether a stay is in the interest of judicial economy, and only purports to answer the unrelated question of how to serve judicial economy in the event the case is not stayed. Even given the posture of Plaintiffs' caselaw concerning coordinated discovery between the cases, they have failed to explain how coordinating discovery, and the accoutrement of litigation, including motion practice, in this case which is entirely subject to the outcome of the

---

[5] *See In re Universal Health Services, Inc. Deriv. Litig.*, WL 8758704 at *1 (Case involving claims not at issue in securities class action); *In re Molycorp, Inc. Shareholder Deriv. Litig.*, 2014 WL 1891384 (Derivative case initially stayed due to "overlap" between derivative case and securities class action. Stay only lifted in light of resolution of SEC investigation and proposed amended complaint asserting independent claims. Court recognized these interests may not support simultaneous prosecution of securities class action suits and later-filed derivative actions and that Courts frequently stay derivative claims in favor of actions where the corporation's primary liability will be adjudicated); *In re China Agritech, Inc. Shareholder Deriv. Litig.*, 2013 WL 2181514 (Del. Chanc. 2013) (Recognizing that Courts will stay indemnification-oriented derivative claims but noting same was not primarily indemnification-oriented); *Sonkin v. Barker*, 670 F.Supp. 249, 252-53 (S.D. Ind. 1987) (Derivative action not dependent on outcome of securities litigation as company already suffered $2.7 billion in losses and further included claims for lost business opportunities, interest expenses, difficulties in obtaining credit which were damages not asserted in the securities action).

securities fraud class action lawsuit, promotes judicial economy. Even the coordination of discovery will require judicial resources unnecessary until and if the instant claims are ripe.

### 1. *Plaintiffs Have Failed to Rebut the Harm to Co-Diagnostics*

Finally, Plaintiffs have failed to rebut the harm of not staying this case. There is no question that Plaintiffs have to establish that false and misleading statements were made by the company in order to prove their case. There is also no question that the establishment of the same would cause the company to incur tremendous damages in the securities fraud class action lawsuit. By contrast, by allowing the company to solely and successfully defend that case, the damages complained of herein will not come to fruition and there will not be a need to sue on behalf of the company.

Plaintiffs have attempted to evade this very basic logical analysis, once again, by citing caselaw with fact patterns inconsistent to that at issue. To be clear, the case cited by Defendants in their moving brief is precisely on point. In *Breault v. Folino*, a derivative claim was brought against officers and directors of a corporation asserting claims of breach of fiduciary duties and participating in insider trading in connection with allegedly false and misleading statements. 2002 WL 31974381 at *1 (C.D. California 2002). A class action suit was filed against the company for the same conduct alleged in the derivative action. These facts are identical to those at bar. There, based on identical arguments made herein, the Court stayed the derivative action, reasoning that:

> Prosecution of this action will conflict with Emulex's defense of the pending class actions…Defendants are likely witnesses who Emulex will rely upon in the pending cases against it. Plaintiffs will need to undermine Defendants' credibility to pursue this action. Emulex would be harmed by Plaintiffs' pursuit of this derivative action now because its defense in the pending class actions also would be challenged in this suit. This action will divert Emulex's financial and management resources from the pending litigations against it. At this time it is not in Emulex's best interest to litigate Plaintiffs' allegations. *Breault*, WL 31974381 at *2

The analysis could not be simpler and the facts could not be more on point. By contrast, the facts of the cases cited by Plaintiffs are inapposite and their increasing complexity distort the very basic and

sound principle recited above.[6] For example, in *Apollo Group, Inc. v. Sperling*, the derivative plaintiffs asserted claims, in addition to fiduciary duty claims, of abuse of control, gross mismanagement, unjust enrichment, and corporate waste. 2012 WL 79237, at *1 (D. Ariz. 2012). The *Sperling* Court denied the motion to stay, finding there was no compelling unity of issues and was unsure whether a resolution in the securities action would resolve the derivative action. *Id.* at *2. By contrast, all of the issues in this derivative case will be resolved in the securities fraud class action lawsuit.[7] Further, although the *Sperling* Court spoke to the potential of a conflict of interest, it did not address the argument Defendants make herein, which is that the attempt to prove liability in this case might result in liability in the securities class action. Likewise, the Court in *Galena* speaks to the "conflict" in the same manner; while noting the argument that defenses will be undermined, the Court only addressed the procedural manner by which the conflict arose, and spoke to the fact that in both cases it is the shareholders who are redressed. 83 F.Supp.3d 1033 at 1044-45. Thus, it appears that the Court did not reason against their argument, but looked at the issue through the lens of a conflict of interest.

The ultimate issue here is that it goes against the company's interest to try to establish liability which would establish liability in the case this action is meant to indemnify. Plaintiffs have totally failed to address that or explain how it is not a concern. Instead, they have ignored and dismissed it without response. The cases Plaintiffs cite are inapplicable here and thus Plaintiffs have failed to rebut Defendants' arguments. Accordingly, this factor should also weigh in favor of a stay, and the motion should be granted.

## CONCLUSION

---

[6] For example, misplacing reliance on *City of Austin Police Retirement System v. ITT Educational Services, Inc.*, 2005 WL 280345 (S.D. Ind.), which operated under much more complex factual circumstances and entirely separate bodies of law. Plaintiffs also rely on a slew of unreported decisions in their footnote 5 which are equally inapplicable, including decisions lifting PSLRA stays, which is not at issue here.

[7] Including Defendants' response in the Response Letter that they investigated the claims and determined there were no false or misleading statements made.

For all the foregoing reasons, the Court should grant the motion to stay.

Dated: Salt Lake City, Utah
June 23, 2021

        Kesler Rust
        _____
        Ryan B. Hancey, Esq., Utah State Bar Number 9101
        *Attorney for Defendants*
        68 South Main Street, Suite 200
        Salt Lake City, Utah 84101

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June, 2021, a true and correct copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION FOR STAY OF ACTION was filed via the CM/ECF system, and accordingly, delivered to all parties of record.

        By: /s/ Ryan B. Hancey
        _____
        Ryan B. Hancey, Esq.,