**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| IN RE CO-DIAGNOSTICS, INC. DERIVATIVE LITIGATION | **ORDER RE: JOINT PROTOCOL FOR ESI AND DOCUMENT PRODUCTION**<br><br>Case No. 2:20-cv-00836-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

**1.    PURPOSES AND LIMITATIONS**

Discovery requests and subpoenas served in the Action may call for the production of Documents (as defined below).  Having considered the parties' Stipulated Motion for Order re: Joint Protocol for ESI and Document Production (ECF 39) (Motion), and pursuant to the stipulation of the parties and for good cause appearing, the court hereby GRANTS the Motion and enters the following Stipulated Order re: Joint Protocol for ESI and Document Production.

**2.    DEFINITIONS**

2.1    <u>Action</u>:  means the above-captioned consolidated action, *In re Co-Diagnostics, Inc. Derivative Litig.*, Lead Case No. 2:20-CV-00836-JNP-CMR (D. Utah).

2.2    <u>Document</u>:  has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A).  The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

2.3    <u>Email</u>:  means electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes.

2.4    <u>Email Threading</u>:  means a single Email conversation that starts with an original Email (the beginning of the conversation), and includes all subsequent replies and forwards pertaining to

that original Email.

2.5   ESI: an abbreviation of "electronically stored information," which has the meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

2.6   Extracted Text: means text extracted from a Native Format file and includes at least all headers, footers, document body information, and any hidden text, if available.  The extracted text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates Numbers and Endorsements (except in the cases of redactions).

2.7   Hard-Copy Document:  means Documents existing in paper form at the time of collection.

2.8   Hash Value: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.  The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.  "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

2.9   Instant Messages:  means real time communications sent via chat client or SMS, including but not limited to Bloomberg Chat, Slack, Google Talk, Google Chats, Google Hangouts, Microsoft Teams, WhatsApp, WeChat, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Line, Audium, Trillian, or any proprietary instant messaging system.

2.10   Load File:  means an electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this Stipulated Order, and Metadata, as well as information indicating document breaks, and document relationships such as those between an Email or Instant Message and its attachments, and a document and information related to embedded content.

2.11   Metadata: means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited,

or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates Numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or non-custodial data source from which it was collected.  Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

       2.12   Native Format:  means the format of ESI in the application in which such ESI was originally created or is maintained in the ordinary course of business.

       2.13   OCR:  means the optical character recognition technology used to read Hard-Copy Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

       2.14   Party:  means any party to the Action, including all of its officers, directors, and employees or any other person or entity that is served a subpoena pursuant to Federal Rule of Civil Procedure 45.

       2.15   Producing Party:  means any Party or third-party in the Action that produces Documents.

       2.16   Requesting Party:  means a Party in the Action that served the requests for the production of Documents.

       2.17   Responsive Document:  means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rule of Civil Procedure and/or Court order.

       2.18   Tagged Image File Format or TIFF:  refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard-Copy Documents.

**3.   SCOPE**

The procedures and protocols set forth in this Stipulated Order shall govern the production format of Hard-Copy Documents and ESI in this Action. Nothing in this Order is intended to enlarge, reduce, or otherwise modify the scope of discovery in this litigation. Nothing in this Order is intended to expand or limit the Parties' obligations under the Federal Rules of Civil Procedure. Nothing in this Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is no good cause for the Documents' production. Nothing in this Order is intended to narrow, expand, or affect the rights of the Parties or third parties to object to a subpoena or discovery request. It is not intended for this Stipulated Order to impose requirements related to the scope of responsive data or Documents, methods for culling or reviewing data or Documents, the selection of custodians, or applicable keyword search terms. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action.

The production specifications in this Stipulated Order apply to Documents that are produced in the first instance in this Action. To the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced if the original production included substantially the same Metadata identified in this Order. If such Documents originally were not produced with substantially the same Metadata identified in this Order, the Parties shall meet and confer to discuss whether production of a Metadata overlay or supplemental Metadata production for those Documents is necessary, feasible, and proportional to the needs of this case. The Parties agree that this is not a request to produce the same electronically stored information or Documents in more than one form; rather, it is a process for identifying potential supplemental information that does not require reproduction of previously produced Documents.

The parties acknowledge their obligations to comply with the Federal Rules of Civil Procedure and Local Rules of the District of Utah. Although the parties do not restate all such rules herein, they specifically acknowledge their duty, to attempt to resolve, in person or by telephone, disputes regarding the issues set forth herein before filing a motion with the Court, or otherwise seeking relief; if the Parties are unable to resolve the dispute after a good-faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

3.1   <u>Document and Data Sources</u>:  Following the Parties' exchange of initial discovery requests, the Parties will meet and confer in an effort to discuss and attempt to agree on (a) custodians from whom to collect Documents; (b) custodial and non-custodial data sources for collection; and (c) search terms and date restrictions to be applied in the search, and any technology assisted review ("TAR") protocol used to further narrow the population of Documents for review.

3.2   <u>Search Methodology</u>: To the extent objections to discovery requests are resolved, and subject to reasonable search criteria for custodians and other sources, search terms, and date restrictions, among other things, the Parties agree to search for and produce unique, responsive records from sources of Documents to the extent the Producing Party determines that such locations may contain responsive information and such data is within the possession, custody, or control of the Producing Party, and may be accessed and/or collected using reasonable efforts.

3.3   <u>Custodial and Non-Custodial Document Sources and Search Terms</u>:  The Producing Party shall share with the Requesting Party the custodial and non-custodial sources and third-party sources (under the Producing Party's control) that the Producing Party intends to search for responsive documents (to the extent such sources have been identified at the time of the exchange through reasonable diligence).  The Producing Party will provide the job title, dates of employment (if reasonably accessible following diligent inquiry and search), and a brief description of job responsibilities of the individual custodians it proposes to search and a general description of the expected content of the non-custodial sources.

If the Producing Party intends to use electronic search terms to locate the documents it will review for possible production from a larger set of documents (*e.g.*, custodial email files, custodial

or non-custodial electronic document sets, *etc.*), the Producing Party will share those search terms with the Requesting Party. The Producing Party will use its reasonable judgment about what sources and search terms are appropriate to locate the documents it will produce in response to the Requesting Party's document requests, as required by the Federal Rules.

The Requesting Party may, at its option and in a reasonably timely manner following the Producing Party's corresponding disclosure, propose additional individual custodians, non-custodial sources, or search terms for inclusion in the Producing Party's searches, which the Requesting Party reasonably and in good faith contends are necessary and proportional. The Producing Party will also agree to engage in reasonable meet and confer regarding its proposed search terms and the additional search terms or sources proposed by the Requesting Party. The Producing Party will consider such additions in good faith, being guided by relevance, burden, and proportionality considerations.

For search terms proposed by the Requesting Party that remain the subject of a good faith dispute following meet and confer, the Parties agree to use search term hit lists or hit count reports, where they are reasonably available and reasonable in scope, to guide the conversations of burden. If necessary, the Parties may bring disputes that they cannot cooperatively resolve to the Court for resolution, consistent with any requirements of the Court's standing orders and Local Rules.

Nothing herein prevents the Producing Party from commencing its review of documents for production while the Parties negotiate over potential additional custodians, search terms, or non-custodial sources of responsive information.

3.4    <u>Determinations</u>:  The mere fact that a Document is hit or captured by the application of any agreed upon search terms or search methodology does not mean that such Document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness, and privilege shall be made by the Producing Party. Consistent with The Sedona Conference Principles, Principle 6, the Producing Party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information. A Party using TAR to exclude documents from review for production will inform the other Party. If requested, the Parties will meet and confer

to discuss the process and validation steps.

  3.5 <u>ESI Not Required</u>:  The Parties agree that the following ESI does not require preservation, collection, review, or production because they are either not reasonably accessible or because the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production:

  a. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics;

  b. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

  c. On-line access data such as temporary Internet files, history, cache, cookies, and the like;

  d. Data stored on photocopiers, scanners, and fax machines;

  e. Data in Metadata fields that are frequently updated automatically, such as last-opened dates;

  f. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

  g. Server, system, or network logs;

  h. Data remaining from systems no longer in use that is unintelligible on the systems in use;

  i. Video surveillance data; and

  j. Email, calendars, and contact data sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

Nothing herein shall prevent a Party from subsequently requesting that Documents from the sources identified above be preserved and produced if specific facts demonstrate a particular need for such Documents that justifies the burden of preservation and retrieval.

3.6     Additional Custodians or Data:  The Parties reserve the right to request inclusion of additional custodians or non-custodial data sources whose relevance was discovered via Documents or data produced, or testimony given, or for other good cause shown, within a reasonable time of such discovery.  If the Producing Party objects to the inclusion of such sources, the Parties will meet and confer to resolve the matter.  If the Parties cannot reach resolution, the Requesting Party may ask the Court to resolve the matter.

3.7     The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

4.    PRODUCTION FORMAT

4.1     Format Guidelines:  The Parties shall, to the extent reasonably and technically possible, produce Hard-Copy Documents and ESI according to the specifications provided in **Exhibit A**.

4.2     De-Duplication:  A Party is only required to produce a single copy of a Responsive Document.  Each Party may remove exact duplicate Documents (*i.e.*, identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents.  If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and shall identify all custodians of de-duplicated Documents in the Custodian field delimited by semicolons or in a "Duplicate Custodian" field delimited by semicolons (as set forth in Exhibit A).  Moreover, (a) de-duplication shall be performed only at the Document family level[1] so

---

[1] Unless otherwise agreed upon by the Parties, a family can be removed through de-duplication only if each and every member of the de-duplication candidate family has identical MD5/SHA-1 Hash Values to the corresponding members of another family.  For example, if there is a two-member family with a parent and an attachment, the MD5 Hash Values of each parent must

that attachments are not de-duplicated against identical stand-alone versions of such Documents and *vice versa*, although each family member shall be hashed separately for purposes of populating the HashValue field in Exhibit A; and (b) attachments to Emails, Instant Messages, or other Documents shall not be disassociated from the parent Email, Instant Messages, or Document even if they are exact duplicates of another Document in the production. ESI that is not an exact duplicate according to the method specified in Exhibit A may not be removed. The Parties shall make reasonable efforts to reach agreement on any de-duplication criteria to be used.

4.3   Encryption: The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed, the Parties have no duty to identify the prior encrypted status of such Documents. If Documents are not successfully processed despite use of reasonable efforts, a placeholder TIFF image will be produced stating the file is password protected. Upon request from either Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

4.4   Documents to Be Produced Natively: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, video files, audio files, animation files, Power Point and other presentation files shall be produced in Native Format. If a Document to be produced in Native Format contains privileged or other information requiring redaction, reasonable efforts will be made to produce the Document in TIFF format with redactions and OCR text to remove the privileged or otherwise protected material from the searchable text. Where the Document containing privileged information is too voluminous or it is otherwise impracticable to produce in TIFF format (for example, large Excel files), the Producing Party may

---

be identical and the MD5 Hash Values of each attachment must also be identical. *See infra* ¶ 9 (Email Threading), regarding the de-duplication of Emails in such a way as to eliminate earlier or incomplete chains of Email.

redact the Document in Native Format provided the Metadata of the original Document is made available to the Requesting Party. The Parties may meet and confer to discuss the most appropriate and cost-effective production format.

Each electronic file produced in Native Format shall be assigned a unique Bates Number, as set forth in ¶ 4.9 *infra*, and the database record for that file shall include a single page TIFF image branded with this unique Bates Number in the lower right corner of the image as a Bates Number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Stipulated Confidentiality Order must appear on the associated TIFF placeholder in no less than 10-point font (if practicable). Files produced in Native Format shall be given file names identical to the Bates Number, followed by the file extension and include the confidentiality designation after the file number, *e.g.*, CODX0000000000_CONF.xlsx. For each file produced in Native Format, the Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A.

Each Party reserves the right to request production of ESI, including previously produced ESI, in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A upon a showing of reasonable need for a particular Document. If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

4.5     Embedded Files: Non-image files that are embedded in other files shall be extracted as separate files and treated as attachments to the parent Document. Images embedded in Emails shall not be extracted and produced separately.

4.6     Databases: To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in or created from a database maintained in the normal course of business (*e.g.*, Oracle, Tableau, SQL databases, or other structured data formats), the Parties will meet and confer to discuss whether an appropriate and cost-effective production format exists, which may include an export of data in database or delimited text file

format, as database reports.

4.7     <u>Attachments</u>:  The Parties agree that if any part of an Email or its attachments is responsive, the entire family of Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege, immunity, or privacy laws and subject to the Producing Party's use of de-duplication and Email Threading as outlined in this Order.  Withheld or otherwise unproducible family Documents shall be produced with a Bates stamped placeholder TIFF image that indicates why the document was not included in the production (*e.g.*, "Withheld", "Password Protected"); provided, however, that a Producing Party need not produce a Bates stamped placeholder TIFF image for a fully withheld family.

4.8     <u>Unitization</u>:  The Parties shall make reasonable efforts to unitize the Documents correctly, as set out below.  In scanning paper Documents, each page of paper should be output to a single page TIFF file.  Distinct, logical document breaks should be defined as such in a standard Load File as described in Exhibit A.  In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any document or family relationship among the scanned Documents in the compilation should be reflected in the data Load File at the appropriate standard fields.  For Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable.  Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document.

4.9     <u>Bates Numbers and Confidentiality Designations for TIFF Images</u>: Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Bates Number") containing at least ten (10) digits electronically "burned" onto the image in no less than 10-point font.  Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Bates Number shall be burned on the lower right-hand corner of the Document.  Bates Numbers and any confidentiality designation should not be included in the Extracted Text of ESI.  Unless it would obscure, conceal, or interfere with any information originally

appearing on the Document, any confidentiality designation pursuant to the Stipulated Confidentiality Order filed with the Court will appear on the lower left hand side of each page of a Document produced, in no less than 10-point font. The Bates Number for each Document shall be created so as to identify the Producing Party and the Bates Number (*e.g.*, "CODX0000000000"). Each Party's Bates Numbering scheme shall use the unique identifying name agreed upon by the Parties, to the extent one is agreed upon.

    4.10   <u>Metadata Fields and Processing</u>: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted or generated from a Document shall be produced for that Document. To the extent that Metadata in Exhibit A does not exist or is not reasonably accessible or available for any Documents produced, nothing in this Order shall require any Party to extract, capture, collect, or produce such data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue.[2] Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. The Parties also agree that every production of previously unproduced Documents with a Concordance-format delimited file with a .DAT file extension shall contain all of the Metadata field headers from Exhibit A and that the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all non-privileged Metadata fields will be provided and will include all non-privileged non-redacted data. Redacted Documents shall be identified as such in the load file provided with the production. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by standard, commercially available ESI processing software, or is not reasonably or technically accessible. When the Producing Party is unable to produce Metadata for a particular field or

---

[2] In the case of Documents that were scanned from paper, the HashValue field is not required.

Document, the Requesting Party may request an explanation of that inability. The Parties shall then meet and confer to attempt to resolve the problems.

4.11  Production Media:  The Producing Party shall produce Document images, Native Format files, Load Files, and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media").  Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Bates Number ranges of the Documents in that production (*e.g.*, "Dfts' Production March 1, 2022, CODX0000000123 - CODX0000000456").  To the extent that the Production Media includes any confidential information protected under any Stipulated Confidentiality Order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Stipulated Confidentiality Order.  Production Media shall include text referencing the case name and number.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.  All Production Media that is capable of write protection should be write-protected before production.  All Production Media may be encrypted, with the Producing Party to provide a decryption key under separate cover at the time of production.

4.12  Original Documents:  Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain data pursuant to the Federal Rules of Civil Procedure and/or Court Order.

4.13  Color:  All TIFF formatted Documents will be single page, black-and-white, 300 DPI, Group IV* .TIFF images.  ESI that contains substantive color will be reasonably identified by the producing party and produced as color for color in single page, JPG format.  By default, this includes the following file types:

- JPG, PNG, GIF, and other "Image" mime types
- PowerPoint
- PDF
- Word

The Parties will accommodate reasonable requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available and where reasonably necessary to decipher the complete meaning, context, or content of the documents on a case-by-case basis.

4.14   Lost, Destroyed, or Irretrievable ESI:  If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall comply with its disclosure obligations under the Federal Rules of Civil Procedure.

4.15   Foreign Language Documents:  Documents that contain foreign-language text shall be produced in the language in which they appear in Native Format.  The Producing Party has no obligation to provide a translation of the Documents or ESI or any portion thereof.

5.   PROCESSING SPECIFICATIONS

The Producing Party will generate and preserve the MD5 or SHA-1 Hash Values of all ESI based on the Native Format file.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:  Where Documents are not otherwise produced natively, all TIFF images shall display deletions, revisions, comments, speaker notes, and other rich data (including, but not limited to, hidden text, strikethrough text, the identity of the person making the deletion or revision and the date and time thereof, *etc.*) as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible.  Producing Parties shall make reasonable efforts to process all ESI and associated Metadata fields with a single time zone and a date and time setting that is consistent across all of the Parties' productions and shall make reasonable efforts for that time zone to be Pacific Time.  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

6.   CONFIDENTIALITY

Documents produced in the Action shall be subject to the terms of the Stipulated

Confidentiality Order agreed upon by the Parties, and entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

**7.     REDACTION**

The Producing Party may redact privileged or otherwise protected information, and personal identity information within a produced Document.  If, during the course of discovery, the Parties identify other kinds of information that and Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made.

**8.     PRIVILEGE & PRIVILEGE LOG**

8.1   The Parties agree that they need not exchange the text of litigation hold/retention instructions issued in this litigation, but reserve the right to make such a request.

8.2   The Parties agree to exchange privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5).  The Stipulated Confidentiality Order agreed upon by the Parties and entered by the Court governs any claim, or challenge thereto, that produced Documents are covered by the attorney-client privilege, work-product doctrine, or other applicable privilege or immunity.

8.3   The Parties agree that certain privileged communications or Documents need not be included in a privilege log (so long as no third party was included on the communication and/or the document does not appear on its face to have been transmitted to any third party), including privileged communications between a Party and its inside or outside counsel, any communications among counsel for the Party (including within a law firm or between inside and outside counsel), work product of counsel, or communications protected by the common interest doctrine.  The Parties will meet and confer in good faith regarding the scope of the privilege log should any issue arise.  Further, the Parties agree that Documents that have been redacted need not appear on a privilege log in the first instance so long as the reason for redaction is on the face of the Document (this may be indicated in the text of the redaction box, *e.g.*, "REDACTED – PRIVILEGED"); to the extent the basis for the redaction is not apparent from the face of the Document, the Requesting Party may request additional information in order to assess the claim of privilege pursuant to ¶ 8.6.

8.4   In an effort to avoid unnecessary expense and burden, the Parties agree that, for

Documents withheld from production on the basis of attorney-client privilege, work-product doctrine, and/or any other applicable privilege, the Producing Party will prepare a log containing, for each Document (except those exempted above), sufficient information to allow the Requesting Party to evaluate the claim of privilege.

8.5     If the Requesting Party requires further information, it shall explain in writing the need for such information.  Within thirty (30) days of such a request, the Producing Party shall provide additional description of the withheld information to enable the Requesting Party to assess the claim of privilege or explain why that is not feasible.  The Producing Party may provide such description for individual Documents, or for categories of Documents or ESI if individual review and description would be unduly burdensome given the time and/or expense required to do so.

8.6     <u>Contesting Claim of Privilege or Work-Product Protection</u>:  If the Requesting Party contests the claim of attorney-client privilege or work-product protection, or similar claim of privilege or protection, the Requesting Party must notify the Producing Party of such contention in writing. The Parties must meet and confer and make a good faith effort to cooperatively classify the challenged Documents and ESI into categories that are subject to common factual and legal issues in so far as practicable.  Thereafter, if the dispute is not resolved, the Parties shall jointly request a conference with the Court to devise a plan for resolving the dispute.

## 9.   EMAIL THREADING

Each Party may de-duplicate and suppress lesser inclusive Emails and any identical attachments associated with an Email chain, but only to the extent all unique, responsive content from the Email chain and unique attachments are produced.

## 10.   SYSTEM FILES

Each Party may exclude certain files and folders that are reasonably identified as common system files defined by the NIST library and not likely to contain user-created files.

## 11.   THIRD-PARTY ESI

A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to the litigation have requested that the third party

produce Documents in accordance with the specifications set forth herein. The Issuing Party is responsible for producing any Documents obtained under a subpoena to all other Parties.

**12.   AMENDMENT OF ORDER**

Nothing herein shall preclude any Party from seeking to amend this Order in writing for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute.

Pursuant to the stipulation, **IT IS SO ORDERED.**

DATED this 17 May 2022.

*/s/ Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

# EXHIBIT A

1. **PRODUCTION LOAD FILES**

   There will be two Load/Unitization files accompanying all productions of ESI:

   - The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension that contains the agreed-upon Metadata fields. For all DAT files: if no foreign language is contained in the production, then UTF-8 text encoding is acceptable; however, if there will be foreign language documents, the text encoding must be in Unicode.

   - The second will be a cross-reference file that contains the corresponding image information [IDX] identifying document breaks. The acceptable formats for the cross-reference files are .log and .opt.

2. **IMAGES**

   - Produce documents in Single Page Group IV TIFF black and white files.

   - Image Resolution of at least 300 DPI.

   - Produce ESI that contains substantive color as color for color in single page, JPG format. By default, this includes the following file types:
     - JPG, PNG, GIF, and other "Image" mime types
     - PowerPoint
     - PDF
     - Word

   - File Naming Convention: Match Bates Number of the page.

   - Insert placeholder image for files produced in Native Format (*see* ¶ 4.4).

   - Original document orientation or corrected orientation shall be retained.

3. **SPECIAL FILE TYPE INSTRUCTIONS**

   - Certain file types shall be produced in Native Format, as specified in ¶ 4.4.

   - If redactions are required, see production requirements specified in ¶ 4.4.

4. **FULL TEXT EXTRACTION/OCR**

   - Where available, produce full Extracted Text for all file types (Redacted text and text of withheld Documents will not be produced). Redacted documents should be re-OCRed and the non-redacted text should be produced.

   - Produce OCR text output for any paper document.

   - Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where Extracted Text cannot be provided, using industry standard OCR technology (Redacted text and text of withheld Documents will not be produced).

   - Production format: Single text file for each document, not one text file per page.

   - File Naming Convention: Match BegBates Number.

5. **ESI (AND HARD-COPY TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

- Source: Name of Party Producing the document.
- BegBates: Beginning Bates Number.
- EndBates: Ending Bates Number.
- BegAttach: Beginning Bates Number of the first document in a document family range. Documents that are part of document families, *i.e.*, containing parents and attachments should receive a value.
- EndAttach: Ending Bates Number of the last document in attachment range in a document family range. Documents that are part of document families, *i.e.*, containing parents or attachments, should receive a value.
- Custodian: Name of the Custodian of the Document Produced.
- Duplicate Custodians: Names of all custodians who had a copy of a document that was removed through the de-duplication process, if applicable.
- FileName: Filename of the original source ESI as stored by the custodian.
- NativeLink: Path and filename to produced Native Format file (*see* ¶ 4.4)
- EmailSubject: Subject line extracted from an Email message.
- Title: Title field extracted from the metadata of a non-Email document.
- Author: Author field extracted from the metadata of a non-Email document. *Parties acknowledge that the Author field may not actually reflect the author of the document.
- From: From field extracted from an Email message, including both the display name and the SMTP address.
- To: To or Recipient field extracted from an Email message, including both the display name and the SMTP address.
- Cc: CC or Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.
- BCC: BCC or Blind Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.
- DateSent: Sent date and time of an Email message (mm/dd/yyyy format).
- TimeSent: Sent time of an Email message or Instant Message (hh:mm:ss format).
- TimeZoneProcessed: The originating time zone of the document.
- DateCreated: The origination date of the document. (mm/dd/yyyy format). (*Parties acknowledge that the DateCreated field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (*e.g.*, the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location).
- DateLastModified: Last modification date and time (mm/dd/yyyy format).

- PageCount: The number of pages of the document, excluding the pages of documents in the same family.
- [MD5/SHA1] HashValue: MD5 or SHA-1 Hash Value, but please specify using field name.
- File Extension: File extension of document (.msg, .doc, .xls, etc.).
- ExtractedText: File path to Extracted Text/OCR File.
- Confidentiality: "Confidential" or "Highly Confidential," if a document has been so designated under the Stipulated Confidentiality Order; otherwise, blank.
- Attach Count: Number of attached files.
- Message-ID: The Outlook Message ID assigned by the Outlook mail server, if applicable.
- Reference Chain: The Outlook message "Reference Chain," if applicable.
- Document Type: Descriptor for the type of document. "E-document" for electronic documents not attached to Emails; "E-mail" for all Emails; "E-attachment" for files that were attachments to Emails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image.
- Importance: High Importance – indicates priority Email.
- Redacted (Y/N): Whether the document contains redactions.
- Embedded Source: The Bates Number of the source file from which the embedded file was extracted (if applicable).

6. **DE-DUPLICATION**

- De-duplication method: Parties may make reasonable efforts to de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash Value matching.
- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be processed, reviewed, or produced.